■ CHEMICAL BANK, Appellant-Respondent, v ROBERT J. ETTINGER et al., Respondents-Appellants, et al., Defendant. (And a Third-Party Action.) [602 NYS2d 332] —Order and judgment (one paper) of the Supreme Court, New York County (Beverly S. Cohen, J.) entered April 20, 1992, which, inter alia, denied portions of plaintiff Chemical Bank's motion for partial summary judgment dismissing defendants' counterclaims and for a protective order, and granted defendants' cross motion to compel discovery and granted plaintiff's motion for partial summary judgment as to the first through sixth causes of action in the amended complaint and dismissed defendants' affirmative defenses to the extent that they relate to defendants' liability under the first through sixth causes of action, is unanimously modified, on the law, to the extent of granting

plaintiff's motion to dismiss the counterclaims and denying defendants' cross motion for discovery, and otherwise affirmed, without costs or disbursements.

In December, 1983, defendant Robert J. Ettinger (hereafter "Ettinger") pledged a passbook account and certificate of deposit in the then total amount of $391,166.68 plus rollovers to secure loans and advances by plaintiff to Louby Associates, a New York partnership of which he is a general partner. Ettinger is also an officer of the corporate defendants and a general partner of the partnership defendants. Third-party defendant on the counterclaims, Lawrence E. Goldschmidt (hereinafter "Goldschmidt"), is a general partner of Louby and co-obligor of Louby's indebtedness to plaintiff. Defendant pledged and hypothecated to plaintiff bank his collateral, as security for any and all loans made by the bank at any time to Louby.

On December 16, 1984, Ettinger gave plaintiff his unconditional written guaranty of payment of all Louby's indebtedness to plaintiff, whether existing or thereafter incurred, regardless of plaintiff's release, compromise or alteration of any obligation of Louby (the "Borrower"), its partners or guarantors. The guaranty reads, in pertinent part: "[T]he Bank may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of the Borrower, or of any such other person * * * and generally deal with the Borrower or any such security or other person as the Bank may see fit; and the undersigned shall remain bound under this guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance compromise, waiver, inaction, extension of further credit or other dealing."

On July 24, 1985, to induce plaintiff to extend and continue credit to Ettinger or third parties on the guaranty, Ettinger executed and delivered a general loan and collateral agreement which provided, *inter alia,* that the bank would have a lien upon all defendants' property in the possession of the bank as well as on the balance of any deposit accounts in existence or *in futuro.* The bank was authorized to apply such balances, at any time, without prior notice, to any liability of Ettinger, even if contingent and whether or not the collateral of others who were previously liable would be adequate.

On October 2, 1987, Ettinger and Goldschmidt, as general partners of Louby, executed and delivered to plaintiff a time note in the amount of $1,300,000. The note provided, with

respect to the release or compromise of the debt to the bank that the bank could release "any party" to the note *without notice* to the other acting as co-maker, guarantor or surety, without affecting the liability of any signer.

On September 3, 1987, Ettinger executed and delivered to plaintiff a personal time note in the amount of $1,052,183.40, which gave the bank a lien on Ettinger's deposits and the right to apply them to satisfy the note or other liabilities of defendant "whether or not due". The note also provided that Ettinger waived any right to interpose counterclaims or setoffs in any litigation relating to the note or liabilities.

The two notes matured and came due in January and February 1988 and Ettinger's personal checking account and Louby's corporate accounts, guaranteed by Ettinger, were overdrawn in April 1988.

After notifying Ettinger and Goldschmidt they were in default, settlement negotiations thereafter took place over two years but despite meetings, draft agreements and correspondence, Ettinger and plaintiff failed to agree on any debt restructuring. Agreements, however, were reached between plaintiff and Goldschmidt which resulted in the release of his Louby obligations in consideration of payment by Goldschmidt which was applied to pay half of the Louby note and half of the Louby checking account overdrafts.

Since no settlement had been reached with Ettinger, plaintiff elected to draw down and apply to the outstanding Ettinger and Louby obligations five certificates of deposit of Ettinger's being held by the bank. By letter dated August 20, 1990, plaintiff advised Ettinger that the bank had drawn down $2,773,117.30 on August 10, 1990, and offered (for the second time) to furnish an accounting of the remaining amounts due. The bank also drew down on the bank account at Dime Savings Bank which Ettinger had specifically pledged in the amount of $200,411.91. After application of both the certificates of deposit and the Dime Savings Bank account against Ettinger's personal obligations and the Louby obligations, a balance remained of $69,196.39.

Thereafter, upon failure by all defendants to pay overdrafts on other various corporate and partnership accounts totalling $978,905.85, plaintiff commenced this action. The first through sixth causes of action in the amended complaint sought payment on amounts owed by the two corporate defendants, the four partnership defendants, and Ettinger and Karen Ettinger as partners of the partnerships. The seventh cause of action

alleged liability against Ettinger for the overdraft obligations based on his guaranty. Defendants set forth 10 affirmative defenses, and six counterclaims. The counterclaims basically allege that plaintiff wrongfully misapplied Ettinger's collateral to satisfy obligations allegedly owed by Goldschmidt or his entities to which Ettinger had no relationship or liability.

Plaintiff thereafter moved for partial summary judgment on the first through sixth causes of action. The plaintiff also sought dismissal of defendants' counterclaims and their first, second and fourth through ninth affirmative defenses, as well as denial of a discovery request. The IAS Court, *inter alia,* granted the motion to the extent of awarding the plaintiff judgment against the corporate and partnership defendants and denied the motion to dismiss the six counterclaims on the grounds that the counterclaims asserted by Ettinger raised "colorable issues" of fact with respect to the individual defendants.

The counterclaims are based on allegations that the bank converted or conspired to convert Ettinger's collateral pledged to satisfy his obligations and, without authorization or justification, used it to satisfy those of Goldschmidt. None of the allegations in the counterclaims, however, refute the fact that the actions of plaintiff were expressly authorized by the loan documents, pledge letter, collateral letter and guaranty.

While defendant Ettinger contends in the first counterclaim that plaintiff converted his certificates of deposit and monies in other accounts, funds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank *(Geler v National Westminster Bank,* 770 F Supp 210, 215). Further, a bank has a general lien on funds and securities in its possession to which it may look for repayment of an account owed by the debtor-depositor to the bank *(see, e.g., Marine Midland Bank v Graybar Elec. Co.,* 41 NY2d 703, 708). When a party, such as Ettinger, has expressly authorized the bank to set off its debt, the bank has an absolute right to utilize the borrower's accounts against said matured debt *(see, Gillman v Chase Manhattan Bank,* 73 NY2d 1, 15). The court thus erred in denying the motion to dismiss the first counterclaim for conversion.

The second counterclaim for prima facie tort is also deficient. A cause of action for prima facie tort must include: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts

that would otherwise be lawful" *(Curiano v Suozzi,* 63 NY2d 113, 117). This counterclaim asserts that the bank misapplied the certificates of deposit and bank accounts in violation of 18 USC § 656. However, that statute protects banks against criminal misconduct of bank employees. The defendants herein do not have standing to assert such a claim under this statute *(see, United States v Clark,* 765 F2d 297). Even assuming such standing, the action by the bank in drawing down the collateral was not misapplication of funds or a violation of 18 USC § 656, since it was permissible under the terms of the loan documents, pledge letter and collateral agreement. In addition, the claim for prima facie tort must fail since the bank was protecting valid business interests by applying proceeds to an uncured deficiency and thus *was* acting with excuse or justification.

The third counterclaim for conspiracy to convert should also have been dismissed because "[a] claim of conspiracy does not constitute a substantive tort and may be alleged only to connect a defendant to an otherwise actionable tort" *(Monsanto v Electronic Data Sys. Corp.,* 141 AD2d 514, 515). Thus, the conspiracy to convert must fail because of the failure of the conversion and prima facie tort claims.

The fourth counterclaim for fraud was also not viable. Pleadings for fraud must allege misrepresentation of a material existing fact, falsity, scienter, deception and injury *(see, Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403, 407). Further, these essential elements of a cause of action for fraud must be set forth with the requisite particularity *(see,* CPLR 3016 [b]). The allegations of this counterclaim allege favoritism by the bank in favor of Goldschmidt and his entities over Ettinger. However, the undisputed facts demonstrate plaintiff sought settlement with Ettinger over a two year period to no avail, and utilized monies received from its settlement with Goldschmidt to reduce debt also owed by Ettinger. The agreements entered by Ettinger, set forth above in some detail, allowed the bank to collect against him without requiring any action to be brought against the partnership, or "any * * * other person" or requiring the bank to resort first to any collateral held by the bank belonging to the partnership or "any * * * other person". In fact, defendant Ettinger also specifically agreed in the note that the bank could release any party "without affecting the liability of any of the undersigned hereof." In the face of this documentary evidence, Ettinger failed to set forth particular facts to satisfy a claim of fraud or conspiracy to defraud.

The fifth counterclaim for tortious interference based on the claim that the bank used Ettinger's funds to satisfy indebtedness of Goldschmidt's entities and failed to disclose its "favoritism" to Goldschmidt and his entities is also deficient. The bank's use of Ettinger's collateral was justified pursuant to the loan documents and pledge agreements, as was its settlement agreement with Goldschmidt. Further, no specific reference was made to any particular contract with which plaintiff interfered. Thus, the conclusory allegations of conspiracy and improper interference were insufficient to meet the requirements for establishing such liability *(Gertler v Goodgold,* 107 AD2d 481, *affd for reasons stated by Sullivan, J.,* 66 NY2d 946).

The IAS Court also erred in refusing to dismiss the sixth counterclaim and finding issues of fact regarding breach of the obligation of good faith and fair dealing. This is especially apparent since the court dismissed defendants' second affirmative defense which alleged basically the same facts. The Louby note and Ettinger guaranty, as set forth above, authorized the bank to settle, release, compromise or alter Goldschmidt's obligations without affecting those of Ettinger, and also permitted plaintiff to apply Ettinger's collateral to the Louby debt. Thus, it was not improper for the bank to release Goldschmidt upon payment of $932,500, which constituted half of the outstanding Louby note balance and checking account overdraft. Even assuming the agreement harmed Ettinger's economic interests, there can be no showing of bad faith in an attempt by the bank to maximize its recovery as permitted by the documents executed by Ettinger. Thus, there was a failure to demonstrate a violation of the covenant of good faith and fair dealing.

While plaintiff contends that the court erred in denying its motion for a protective order with respect to certain demands, since we dismiss the counterclaims, the need for a protective order is now academic. If it were not moot, we would find the demand sought confidential documents regarding Goldschmidt's personal finances as well as irrelevant subject matter, and therefore the protective order should have been granted with respect to those specific demands, 4, 8, 10, 12, 13 and 14 of the amended notice.

We have examined the contentions of defendants upon their cross appeal and find them to be without merit. The reasons given herein as to the non-viability of defendants' counterclaims amply support the dismissal of the defendants' affirmative defenses by the IAS Court and the grant by it of the

plaintiff's motion for partial summary judgment. Concur—Rosenberger, J. P., Ellerin, Kupferman, Asch and Rubin, JJ.