Gary CRUZ, and Claude Pain, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

**TD BANK, N.A., Defendant.**

**No. 10 Civ. 8026(PKC).**

United States District Court, S.D. New York.

March 2, 2012.

Gabriel Oliver Koppell, Law Offices Of G. Oliver Koppell & Assoc., Charles Wayne Juntikka, Charles Juntikka & Associates, LLP, Daniel Feist Schreck, New York, NY, for Plaintiffs.

John Dellaportas, Justin Joseph D'Elia, Duane Morris, LLP, New York, NY, Alexander D. Bono, Michael Salvatore Zullo, Duane Morris LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge:

Plaintiffs Gary Cruz and Claude Pain bring this putative class action against their bank, TD Bank, N.A. ("TD Bank") under the Exempt Income Protection Act ("EIPA") and New York common law. Plaintiffs allege that TD Bank restrained their bank accounts and charged them fees in violation of Article 52 of the New York Civil Practice Law and Rules, as amended by EIPA. Article 52, New York's statutory scheme governing the collection and enforcement of money judgments, was amended by EIPA in 2008 to expand procedural protections to judgment debtors and broaden the types of property that may be exempt from restraint by a creditor.

TD Bank moves to dismiss plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6), FED. R. CIV. P. TD Bank urges that the newly added EIPA provisions do not create a private right of action for money damages by a judgment debtor against a banking institution, an issue the parties agree has not yet been addressed by a reviewing court.

The Court first considers whether it should abstain from exercising jurisdiction over plaintiffs' claims. The Court concludes abstention is not warranted. Addressing the merits, the Court concludes that EIPA does not create a new private right of action for the plaintiffs to sue TD Bank for money damages and that the plaintiffs' common law claims fail as a matter of law. TD Bank's motion to dismiss is granted.

## BACKGROUND

For the purposes of the defendant's motion, all nonconclusory factual allegations are accepted as true. *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,* 631 F.3d 57, 63 (2d Cir.2011); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). As the non-movants, all reasonable inferences are drawn in favor of the plaintiffs. *Matson,* 631 F.3d at 63.

Named plaintiffs Gary Cruz and Claude Pain are residents of New York who opened accounts with TD Bank. TD Bank is a national bank that maintains branches in several states, including New York. (Am. Compl. ¶ 10.) Cruz held a savings and checking account at a New York City branch, while Pain held a checking account at one of TD Bank's New York State branches. (*Id.* ¶¶ 11, 15.) Cruz and Pain had approximately $3,020 and $340 in their bank accounts prior to the events of which they now complain. (*Id.* ¶¶ 13, 16.)

Thereafter, the plaintiffs each received notice from TD Bank that their accounts had been frozen pursuant to a restraint by a third-party creditor. (*Id.* ¶¶ 12, 16.) TD Bank allegedly charged each of the plaintiffs administrative fees and overdraft fees associated with the restraints. (*Id.* ¶¶ 13, 16.) Cruz's checking and savings accounts

were restrained from August 2009 until April 2010, while Pain's checking account has been frozen since December 31, 2010. (*Id.* ¶¶ 12–13, 17.)

TD Bank never received from the third-party creditors any disclosures concerning income in plaintiffs' accounts that might be exempt. TD Bank thus did not send any such disclosures to the plaintiffs advising them how to claim an exemption. (*Id.* ¶¶ 14, 18.) TD Bank also did not provide plaintiffs with a copy of the restraining notice that the third-party creditors served upon TD Bank. (*Id.*)

On October 21, 2010, the plaintiffs filed a Complaint in this Court seeking compensatory damages and injunctive relief against TD Bank. With permission of the Court, the plaintiffs filed an Amended Complaint on March 14, 2011, alleging that TD Bank employs a general practice of not complying with the statutory requirements of EIPA.

Plaintiffs allege that TD Bank did not ask creditors for copies of certain notices and forms that explain the rights of debtor—account holders. (*Id.* ¶ 27.) TD Bank then did not forward any such notices or forms to the debtors, but still honored restraints imposed by third-party creditors and charged overdraft fees to the plaintiffs' accounts. (*Id.* ¶ 28.) The foregoing are alleged to be violations of the requirements of EIPA and are said to give rise to a private right of action for money damages.

### RULE 12(b)(6) STANDARD

Defendant TD Bank moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), FED. R. CIV. P. Rule 8(a)(2) requires " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (ellipsis in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the grounds upon which the claims rest, through factual allegations sufficient " 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1949–50.

In ruling on a motion to dismiss, the Court draws all reasonable inferences in the plaintiff's favor and accepts as true all well-pleaded factual allegations in the complaint. *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.2007) (per curiam). Although the Court is generally limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). This Court may also consider any document integral to the complaint upon which it "relies heavily." *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002). Lastly, this Court may consider matters of public record of which it make

take judicial notice. *See Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

## DISCUSSION

Plaintiffs bring six claims against TD Bank, seeking relief under EIPA and asserting five claims under New York common law: conversion, breach of fiduciary duty, fraud, unjust enrichment, and negligence. (Am. Compl. ¶¶ 40–77.) [1]

### I. *Plaintiffs Have Standing to Pursue This Case*

TD Bank alleges that the two named plaintiffs, Cruz and Pain, lack standing to pursue their claims. (Def.'s Mem. L. at 4–6.) Cruz allegedly lacks standing because he filed a Chapter 7 bankruptcy petition in which he did not schedule this cause of action. Because Cruz thereafter received a discharge of his bankruptcy proceeding, TD Bank claims this lawsuit is property of the bankruptcy estate, not Cruz. (*Id.*) Plaintiff Pain allegedly lacks standing because he originally opened his TD Bank checking account at one of its New Jersey branches. TD bank thus argues that New Jersey law, not EIPA, applies to plaintiffs' allegations. (*Id.* at 6.)

■■■■ The plaintiffs have standing to pursue their claims. Plaintiffs have put forth evidence that prior to filing the Amended Complaint, Cruz reopened his bankruptcy proceeding and amended his schedule to include this action. Subsequently, the trustee presiding over Cruz's estate filed a "no-asset report" abandoning its right to this action. (Koppell Decl. Ex. A.) Because the asset therefore reverts to Cruz, he has standing. *Fedotov v. Peter T. Roach & Assocs., P.C.,* 354 F.Supp.2d 471,

475–76 (S.D.N.Y.2005) ("[P]roperty, including a cause of action, properly scheduled pursuant to [the Bankruptcy Code] and not administered by the Trustee, reverts to the debtor's possession once the bankruptcy estate is fully administered …."). As to Pain, TD Bank offers no evidence disputing Pain's allegation that he was a New York resident at the time the collection was enforced against him and at the time this action was filed. Nor has TD Bank provided this Court any judicial or statutory authority holding that Article 52 or EIPA's provisions apply only to bank accounts initially opened in New York.

Accordingly, the plaintiffs have standing to pursue their claims.

### II. *Article 52 and the Exempt Income Protection Act*

Plaintiffs seek relief against TD Bank for failing to comply with Article 52 of the CPLR as amended by EIPA. (Am. Compl. ¶¶ 40–51.) As noted previously, whether a judgment debtor can invoke EIPA to bring a private right of action for money damages against his bank has not been decided by a New York court in a reported decision.

Article 52 governs the enforcement and collection of money judgments in New York state courts. It defines specific types of property exempt from restraint or attachment, CPLR § 5205, the methods for notifying a debtor that his account has been restrained, *id.* § 5222, "special proceedings" wherein creditors, debtors, and "any interested person" can adjudicate disputes over income or property, *id.* §§ 5225(b), 5227, 5239, and the proper state-court venues for commencing such

---

**1.** Unlike the original Complaint, the Amended Complaint does not allege breach of contract. Also in their initial Complaint, plaintiffs alleged that each class member had "a contract and/or service agreement" with TD Bank containing a covenant by TD Bank to "abide by all federal and state laws applicable to banking institutions." (*Id.* ¶ 56.)

proceedings. *Id.* § 5221. In 2008, Article 52 was amended by EIPA. 2008 N.Y. Laws Ch. 575 (eff. Jan. 1, 2009). EIPA provides "significant new substantive and procedural protections to judgment debtors." *North Shore Univ. Hosp. at Plainview v. Citibank Legal Serv. Intake Unit,* 25 Misc.3d 655, 883 N.Y.S.2d 898, 900 (N.Y.Dist.Ct.2009). EIPA's stated purpose is to "create a procedure for the execution of money judgments on bank accounts containing exempt funds to ensure that debtors can" continue to access those funds. Division of the Budget Recommendation, Bill Jacket to Ch. 575 (Assembly Bill 8527), Laws of New York, 2008.

EIPA's provisions, as added or amended, are found in CPLR §§ 5205, 5222, 5222–a, 5230, 5231, and 5232. CPLR § 5205 lists sources of income that are exempt from satisfaction of a money judgment, such as social security benefits, disability benefits, and public assistance. As amended, CPLR § 5205(1) provides that if exempt payments are made electronically or via direct deposit into a debtor's bank account within forty-five days prior to service of a restraining notice on a bank, the first $2,500 in the account is exempt from restraint.

CPLR § 5222 allows a judgment creditor to restrain a debtor's bank account. *Id.* § 5222(a)-(b). EIPA amended CPLR § 5222 to revise the content of the restraining notice to be provided to debtors and to give debtors additional protections. This provision now prohibits restraint of either the first $2,500 of "reasonably identifiable" federally-exempt payments in the account, or the first $1,740 of the debtor's account regardless of the source of the funds. *Id.* §§ 5205(1), 5222(i).[2] Banks are also prohibited from charging fees to judgment debtors whose accounts are exempt from restraint or restrained "in violation" of EIPA. *Id.* § 5222(e), (h)-(j).

CPLR § 5222–a is an entirely new provision added pursuant to EIPA that requires notifying debtors of available exemptions and how to claim them. A judgment creditor must now serve upon the bank several documents in order to impose a restraint on the debtor's account: two copies of the restraining notice, an exemption notice, and two exemption claim forms. *Id.* § 5222–a(b)(1). CPLR § 5222–a(b)(4) prescribes the proper format for the exemption notice and exemption claim forms. The exemption notice "advises the judgment debtor that his or her bank account is being restrained" and lists types of funds that are exempt from restraint. *North Shore,* 883 N.Y.S.2d at 900. The exemption claim form permits the, judgment debtor to claim an exemption by "simply checking the line on the form" next to each source of exempt funds in his account and mailing two completed forms, one to the bank and the other to the judgment creditor's attorney. *Midland Funding LLC v. Singleton,* 34 Misc.3d 798, 935 N.Y.S.2d 844, 847 (N.Y.Dist.Ct.2011) (citing CPLR § 5222–a(b)(4)(c)); CPLR § 5222–a(b)(4)(a). A restraint is void if the creditor fails to serve upon the bank these notices and forms. *Id.* § 5222–a(b)(1).

CPLR § 5222–a imposes new requirements on banks. A bank "shall not restrain" the debtor's account unless it receives the notices and forms from the creditor. *Id.* § 5222–a(b)(1). Once it receives them, the bank is required to mail copies to the debtor. *Id.* § 5222–a(b)(3). A bank that receives a completed exemp-

---

**2.** The statutorily exempt amount described in CPLR § 5222(i) correlates to the federal minimum hourly wage and thus increases over time. The limit was $1,716 as of January 1, 2009, but rose to $1,740 effective July 24, 2009. *Id.*

tion claim form back from the debtor must notify the creditor; unless the creditor timely objects, the bank must release all exempt funds. *Id.* § 5222–a(c)(2)-(3). If the bank does not receive an exemption claim form from a debtor within twenty-five days, all funds in the account "remain subject to the restraining notice." *Id.* § 5222–a(c)(5). Even if a debtor fails to submit an exemption claim form according to this process, it "does not constitute a waiver of any right to an exemption." *Id.* CPLR § 5222–a(b)(3) states: "[t]he inadvertent failure by a depository institution to provide the notice required by this subdivision shall not give rise to liability on the part of the depository institution." On the other hand, CPLR § 5222–a(g) expressly allows a debtor to seek costs, attorney fees, and "actual damages" against a judgment creditor who objects in bad faith to the debtor's exemption claim.

EIPA's other new provisions, CPLR §§ 5230, 5231, and 5232, extend the above-discussed procedures to executions and levies upon personal property.

Seeking relief under EIPA, plaintiffs allege that TD Bank failed to send the required notices and exemption claim forms under CPLR § 5222–a(b)(3), unlawfully restrained their accounts in violation of CPLR § 5222(i), and charged fees in violation of CPLR § 5222(j). (Am. Compl. ¶¶ 42–51.) Plaintiffs allege "upon information and belief" that in doing so, TD Bank "does not require receipt from creditors" of EIPA's notices and forms and thus "knowingly or negligently" restrained their accounts. (*Id.* ¶¶ 27, 36.) In its motion to dismiss, TD Bank argues: (1) EIPA does not create a private right of action for judgment debtors to sue their banks for money damages; (2) this Court should abstain from hearing plaintiffs' claims; and (3) plaintiffs' EIPA allegations are

preempted by federal law. (Def.'s Mem. L. at 6–17.)

As set forth below, the Court concludes abstention is not warranted and that EIPA does not create a private right of action for money damages by a judgment debtor against a bank.

### III. *Abstention Is Not Warranted Under the Burford Doctrine*

 "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *Cnty. of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* As such, abstention has been "confined" to a handful of limited circumstances, including where there exists a difficult question of state law where federal review may disrupt ongoing state efforts to establish a coherent policy on an issue of local concern. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (cited in *Colorado River,* 424 U.S. at 813–18, 96 S.Ct. 1236).

 The purpose of *Burford* abstention is to "avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." *Am. Disposal Servs., Inc. v. O'Brien,* 839 F.2d 84, 87 (2d Cir.1988). Under the doctrine, "a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult

questions of state law bearing on policy problems of substantial public import whose importance transcends the result of the case then at bar;' or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361–62, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. 1236). "Through application of *Burford* abstention, federal courts are able to refrain from becoming involved with state policy making and enforcement procedures in complex areas of which are primarily the state's concern." *Hanlin Grp. v. Power Auth. of N.Y. State,* 703 F.Supp. 305, 308 (S.D.N.Y.1989), *aff'd mem.,* 923 F.2d 844 (2d Cir.1990).

■■■■ Three factors determine whether federal review would disrupt state efforts to establish a coherent policy: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Hachamovitch v. DeBuono,* 159 F.3d 687, 697 (2d Cir.1998) (internal citations omitted). A court should apply these factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Bethphage Lutheran Serv., Inc. v. Weicker,* 965 F.2d 1239, 1244 (2d Cir.1992) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Although abstention represents an "exception to a [district] court's normal duty to adjudicate a controversy properly before it," district courts enjoy "some latitude in their decision-making." *Id.*

■■■ *Burford* abstention is not warranted in this case. The plaintiffs do not ask the Court to "interfere with the orders or proceedings of state administrative agencies." *New Orleans Pub. Serv.,* 491 U.S. at 361, 109 S.Ct. 2506. Nor does TD Bank identify any "proceedings or orders of state administrative agencies" of which the plaintiffs seek federal review. *Id.* Plaintiffs' claims arise from TD Bank's alleged unlawful restraint and imposition of bank fees. Article 52's provisions do not call for a state regulatory or administrative agency to resolve individualized disputes, and plaintiffs do not ask this Court to overturn an administrator's previous ruling on the events at issue. *Burford* abstention seeks to avoid the danger of "creating an opportunity to overturn a prior state court or agency determination." *Dittmer v. Cnty. of Suffolk,* 146 F.3d 113, 117 (2d Cir.1998) (reversing exercise of *Burford* abstention in constitutional challenge to state land use statute). No such determination has been issued here.

As in *Dittmer,* the plaintiffs here "do not offer a collateral attack on a final determination made by [a regulatory agency or commissioner] or seek to influence a state administrative proceeding." *Id.* at 117. Thus, even were the Court to agree that Article 52 as amended by EIPA is "complex" in addressing the rights of debtors and creditors to enforce and collect New York state judgments, the policies underlying *Burford* are still unmet. "*Burford* is concerned with protecting complex state administrative processes from *undue* federal interference, [but] it does not require abstention whenever there exists such a process ...." *Id.* (quoting *New Orleans Pub. Serv.,* 491 U.S. at 362, 109 S.Ct. 2506). Lastly, TD Bank does not identify how this Court's determination of whether EIPA affords a right of action against a banking institution would "be disruptive of state efforts to establish a coherent poli-

cy." *New Orleans Pub. Serv.*, 491 U.S. at 361, 109 S.Ct. 2506. TD Bank does not state how the Court's resolution of the novel legal issue before it would be disruptive of prior determinations by state administrators or regulatory bodies.

This Court is nevertheless mindful of considerations favoring abstention. Plaintiffs' EIPA claim will likely require this Court afford a "debatable construction to a state statute." *DeBuono*, 159 F.3d at 697 (citing *Bethphage*, 965 F.2d at 1243). The Court necessarily enters "into the business of interpreting the state regulatory regime" in assessing whether EIPA creates a private right of action for money damages by a judgment debtor against a bank. *See id.* This case also does not include only questions of federal law or of a state law's constitutionality. *See, e.g., Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 127 (2d Cir.1995) (finding *Burford* abstention unwarranted where federal constitutional claim did not require resolution of state law); *Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 600–01 (2d Cir.1988) (declining to abstain from constitutional challenge to state medical malpractice law).

██ But TD Bank has not established "extraordinary" circumstances needed for the Court to decline its "virtually unflagging obligation" in this case. *Colorado River*, 424 U.S. at 813, 817, 96 S.Ct. 1236. *Burford* does not require abstention whenever there exists a "complex state administrative" process. *New Orleans Pub. Serv.*, 491 U.S. at 362, 109 S.Ct. 2506. Nor does *Burford* "require or even recommend a state court forum" for claims that could be brought in state court, but were brought in federal court. *Dittmer*, 146 F.3d at 117. "The danger which *Burford* abstention avoids-creating an opportunity to overturn a prior state court or agency determination by seeking federal court review." *Id.*

Here, neither party cites to a prior or ongoing regulatory or administrative proceeding involving either party. As *Burford* abstention is not warranted where the Court's "inquiry would not unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity," the Court will address the merits of plaintiffs' claims, including whether EIPA creates a private right of action for money damages by a judgment debtor against a banking institution. *New Orleans Pub. Serv.*, 491 U.S. at 363, 109 S.Ct. 2506 (reversing exercise of *Burford* abstention in challenge to state's utility rate-setting scheme).

## IV. *EIPA Does Not Create a Private Right of Action by a Judgment Debtor against a Banking Institution for Money Damages*

### a. *EIPA Does Not Expressly Create a Private Right of Action*

██ This Court concludes that EIPA does not create an express private right of action for a judgment debtor to sue his bank for money damages. Plaintiffs concede that there is no specific provision of EIPA that creates a right to sue a bank. Upon review of the entirety of the statute, guided by canons of construction, the Court concludes that EIPA does not create a private right of action for plaintiffs to sue their bank for money damages.

Plaintiffs argue that CPLR §§ 5222–a(b)(3) and 5222–a(h) create a private right of action by negative inference. CPLR § 5222–a(b)(3) exempts a bank from liability for inadvertently failing to send the required notices and exemption claim forms to a debtor. It contains no language creating liability. CPLR § 5222–a(h) states in its entirety: "Nothing in this section shall in any way restrict the rights and remedies otherwise available to a judgment debtor, including but not limited

to, rights to property exemptions under federal and state law." This provision does not enlarge the rights of a debtor, nor does it purport to create new liability for a bank. By its plain words, section 5222–a(h) forecloses restriction of rights already available.

■ Plaintiffs also invoke the canon of construction, *expressio unius est exclusion alterius*. *Expressio unius* means "the mention of one thing implies the exclusion of the other," *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 221 (2d Cir.2009). The maxim cautions a court "not [to] add elements to a list of statutory or regulatory requirements." *Scott v. City of N.Y.*, 592 F.Supp.2d 501, 506 (S.D.N.Y.2008) (citing *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir.1996)). Plaintiffs ask this Court to infer that by exempting banks for "inadvertent" failures, the New York State Legislature "intended to allow *all other* causes of actions against banks." (Pls.' Mem. L. Opp. at 7–8 (emphasis added).)

■ The *expressio unius* canon does not support this claim. Properly invoked, *expressio unius* prevents expanding an enumerated list of items or exceptions; it does not create new substantive rights by negative inference. *See, e.g., Morales v. Cnty. of Nassau*, 94 N.Y.2d 218, 224–25, 703 N.Y.S.2d 61, 724 N.E.2d 756 (N.Y. 1999) (invoking maxim where statute provided "an extensive list of exemptions" to conclude that "an additional exemption" did not exist); *Jewish Home & Infirmary v. Comm'r of N.Y. State Dep't of Health*, 84 N.Y.2d 252, 262, 616 N.Y.S.2d 458, 640 N.E.2d 125 (N.Y.1994) (invoking maxim where "the Legislature has addressed [the] subject and ... created a list of exceptions to a general rule, but has chosen to omit mention of one exception in particular"). The plaintiffs cannot invoke *expressio unius* to create a new private right of action. *Cf. People ex rel. Spitzer v. Grasso*, 42 A.D.3d 126, 135, 836 N.Y.S.2d 40 (1st Dep't 2007) (applying *expressio unius* to disallow state Attorney General from bring causes of action against corporate officers "other than the [five] causes of action the Legislature expressly authorized" in the statute); *Rhodes v. Herz*, 27 Misc.3d 722, 897 N.Y.S.2d 839, 845 (N.Y.Sup.Ct.2010) (applying *expressio unius* to refuse to find private right of action and stating "[h]ad the Legislature intended to provide individuals with a general private right of action ..., it would have provided for this right expressly").

■ Moreover, whether a private right of action exists ultimately depends on the overall statutory scheme and the intent of the New York State Legislature. *See Thoreson v. Penthouse Int'l*, 80 N.Y.2d 490, 496–99, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (N.Y.1992) (relying on *expressio unius*, statutory language, and legislative history to foreclose expansion of listed damages remedies). For the reasons that follow, the legislative history of EIPA does not imply a private right of action against a bank for money damages,

### b. EIPA Does Not Imply a Private Right of Action

■ The standard for whether an implied right of action exists under New York law is set forth in *Sheehy v. Big Flats Community Day. Inc.*, 73 N.Y.2d 629, 543 N.Y.S.2d 18, 541 N.E.2d 18 (N.Y. 1989). Where a law does not expressly create a private right of action, one may be implied only if "fairly [ ] implied" from the law's provisions and legislative history. *Sheehy*, 73 N.Y.2d at 633, 543 N.Y.S.2d 18, 541 N.E.2d 18. *Sheehy* requires a court to consider three factors in making this determination: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether

recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* at 633–34, 543 N.Y.S.2d 18, 541 N.E.2d 18.

The third *Sheehy* factor is the "most critical." *Mark G. v. Sabol,* 93 N.Y.2d 710, 720, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (N.Y.1999); *Grasso,* 42 A.D.3d at 136, 836 N.Y.S.2d 40. "Because of the Legislature's plenary authority over its choice of goals and the methods to effectuate them, 'a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme.'" *Grasso,* 42 A.D.3d at 137, 836 N.Y.S.2d 40 (quoting *Sheehy,* 73 N.Y.2d at 634–35, 543 N.Y.S.2d 18, 541 N.E.2d 18). Accordingly, if a court is to "imply such a right, [it] must have clear evidence of the Legislature's willingness to expose the [party] to liability that it might not otherwise incur." *Uhr v. E. Greenbush Cent. Sch. Dist.,* 94 N.Y.2d 32, 42, 698 N.Y.S.2d 609, 720 N.E.2d 886 (N.Y.1999) (refusing to imply private right of action against "no such legislative intent" existed).

A private right of action by a judgment debtor against a bank for money damages is not consistent with EIPA's legislative scheme. First, a private right of action is not consistent with Article 52's enforcement mechanisms: "special proceedings" that may be brought in New York state courts. *See, e.g., Chase Bank USA, N.A. v. Greene,* 24 Misc.3d 1233(A), 901 N.Y.S.2d 898 (N.Y.City Civ.Ct.2009). CPLR § 5225(b) permits a special proceeding by a creditor against a garnishee to retrieve property. CPLR § 5227 permits a creditor to commence a special proceeding against "any person," including a garnishee, to pay to the creditor a debt owed to the creditor. In both proceedings, notice must be given to the judgment debtor and the court may allow the debtor to intervene. And prior to restraint, CPLR § 5239 permits "any interested person" to commence a special proceeding against a creditor "or other person with whom a dispute exists" to determine competing rights to property. These special proceedings do not fairly imply a post-restraint action by a debtor against a garnishee bank for money damages and injunctive relief. Where the Legislature "specifically considered and expressly provided for enforcement mechanisms" in the statute, recognition of a private right of action is inconsistent with the legislative scheme. *Sabol,* 93 N.Y.2d at 720–21, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (declining to imply private right of action for money damages from New York Social Services Law).

A private right of action against a bank for money damages is also inconsistent with Article 52's available remedies. CPLR § 5239 permits the court to vacate an execution or levy, direct property, or award damages to "any interest person" claiming property against another creditor or "other person," It does not allow a debtor to seek damages or injunctive relief against a bank following restraint. CPLR § 5240 allows "any interested person" to request a court modify, cancel, or extend "any enforcement procedure," but does not provide for damages. CPLR § 5251 permits a court to hold "any person" in civil contempt for willfully refusing to obey a restraining notice or court order. *See, e.g., Viacom Outdoor Grp., Inc. v. McClair,* 62 A.D.3d 864, 864, 878 N.Y.S.2d 785 (2d Dep't 2009) (declining to hold bank in contempt in suit by debtor where bank's delay in lifting restraint "was understandable"). "Where the Legislature has not been completely silent but has instead made express provision for civil remedy,

albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage . . . ." *Sheehy,* 73 N.Y.2d at 636, 543 N.Y.S.2d 18, 541 N.E.2d 18. In seeking money damages and injunctive relief against TD bank, the plaintiffs ask the Court to afford them a broader remedy than what Article 52 provides.

EIPA's new provisions do not create a process for suing a bank. Rather, they permit debtors and creditors to bring claims against one another. If a creditor objects to a debtor's exemption claim, CPLR § 5222–a(d) provides for a judicial hearing between the debtor and creditor. CPLR § 5222–a(g) goes a step further, awarding a judgment debtor "costs, reasonable attorney fees, [and] actual damages" if the creditor objects in bad faith. EIPA thus specifically allows a judgment debtor to seek money damages against a judgment creditor for a bad faith objection, but contains no corresponding provision allowing an action for damages against a bank. Moreover, EIPA revised the restraining notice provided to the debtor to state "[i]f you think that any of your money that has been taken or held is exempt, . . . [y]ou are allowed to try to prove to a judge that your money is exempt under [CPLR sections 5222–a, 5239 and 5240]." CPLR § 5222. The notice does not represent to debtors that private actions for money damages are available against garnishee banks. Taken together, these provisions do not represent "clear evidence of the Legislature's willingness to expose the [defendant] to liability that it might not otherwise incur." *Uhr,* 94 N.Y.2d at 42, 698 N.Y.S.2d 609, 720 N.E.2d 886 (declining to imply private right of action against school districts where "no such legislative intent" existed).

EIPA's legislative history also does not fairly imply a private right of action by a debtor against a bank. EIPA's stated purpose is to "create a procedure" that "ensure[s] that debtors can" continue to access exempt funds. Division of the Budget Recommendation, Bill Jacket (Assembly Bill 8527). EIPA's legislative sponsor described it as "permit[ting] the collection process to continue as designed" and "allow[ing] debtors to claim exempt income while continuing to permit creditors to satisfy their judgments." Assembly Sponsor's Letter in Support, Bill Jacket (Assembly Bill 8527). Evidence of the "evolution" of EIPA does not reveal a legislative intent to create new liability on banks. *See, e.g., Uhr,* 94 N.Y.2d at 40–42, 698 N.Y.S.2d 609, 720 N.E.2d 886 (concluding that "[t]he evolution of [the state education law] is compelling evidence of the Legislature's intent to immunize the school districts from any liability"); *Sabol,* 93 N.Y.2d at 720, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (referring to memorandum of state senator in concluding that enforcement provisions "were enacted as the 'comprehensive' means by which the statute accomplishes its objectives").

Furthermore, EIPA was "modeled upon" a Connecticut state law addressing its enforcement of money judgments. *See* Assembly Sponsor's Letter in Support (Assembly Bill 8527). In that law, the Connecticut State Legislature expressly provided a private right of action by a judgment debtor against a bank. Conn. Gen.Stat. § 52–367b(n) (2009). Titled "Liability of financial institution," the applicable provision provides that if a financial institution unlawfully "pays exempt moneys from the account of the judgment debtor . . ., such financial institution shall be liable in an action therefor to the judgment debtor for any exempt moneys so paid and . . . shall refund or waive any charges or fees." *Id.* But the New York State Legislature did not enact this or a substantially similar provision in EIPA. This conscious

variance with the Connecticut statute suggests that the Legislature did not wish to create the same remedy against banks that Connecticut did. *See Sabol*, 93 N.Y.2d at 720–21, 695 N.Y.S.2d 730, 717 N.E.2d 1067 ("The Legislature has the authority to determine whether opening the statute to private tort law enforcement would advance [its] objectives . . . . Considering that the statute gives no hint of any private enforcement remedy for money damages, we will not impute one to the lawmakers.").

■■■ EIPA imposes new requirements on banks to not unlawfully restrain an account or charge fees pursuant to an improper restraint. *See* CPLR § 5222(j), 5222–a(b)(1). "A statutory command, however, does not necessarily carry with it a right of private enforcement by means of tort litigation." *Uhr*, 94 N.Y.2d at 38, 698 N.Y.S.2d 609, 720 N.E.2d 886. The only provision of EIPA addressing bank liability *exempts* banks from liability for "inadvertent[ly]" failing to comply with the law. CPLR § 5222–a(b)(3). Meanwhile, CPLR § 5222–a(g) specifically creates a damages award against a creditor for bad faith objections, while CPLR § 5252(2) permits an employee to "institute a civil action for damages" against an employer who terminates him because of a wage assignment or income execution. As the Legislature "has not been completely silent but has instead made express provision for civil remedy," this Court will not fashion for plaintiffs a "broader" remedy. *Sheehy*, 73 N.Y.2d at 636, 543 N.Y.S.2d 18, 541 N.E.2d 18. Given the law's plain words, existing proceedings and remedies, and legislative history, this Court finds no "clear evidence of the Legislature's willingness to expose the [defendant] to liability that it might not otherwise incur." *Uhr*, 94 N.Y.2d at 40–42, 698 N.Y.S.2d 609, 720 N.E.2d 886.

Accordingly, TD Bank's motion to dismiss plaintiffs' EIPA claim is granted.

## V. *Plaintiffs' New York Common Law Claims Are Dismissed*

Plaintiffs assert five common law claims arising out of TD Bank's alleged failure to comply with EIPA. (Am. Compl. ¶¶ 52–77.) For the reasons set forth below, the plaintiffs have failed to state claims upon which relief can be granted.

### a. *Conversion*

■■■ Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir.2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (N.Y.1995)). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (N.Y.2006) (internal citations omitted). A plaintiff alleging conversion need not show fault by the defendant. *See LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir.1997).

■■■ Money can be the subject of a conversion claim. "Where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384, 626 N.Y.S.2d 472 (1st Dep't 1995). Funds in a bank account are generally "not sufficiently specific and identifiable . . . to support a claim for conversion against the bank." *Fundacion Museo de Arte Contemporaneo de Caracas v. CBI–TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir.1998)

(quoting *Chem. Bank v. Ettinger*, 196 A.D.2d 711, 714, 602 N.Y.S.2d 332 (1st Dep't 1993)). However, conversion may lie where a specific amount of funds in a bank account is withdrawn or transferred. *Payne v. White*, 101 A.D.2d 975, 976, 477 N.Y.S.2d 456 (3d Dep't 1984).

 Drawing all reasonable inferences in their favor, the plaintiffs have failed to state a conversion claim. The plaintiffs opened checking and savings accounts with TD Bank wherein they deposited their wages. (Am. Compl. ¶¶ 11, 15.) These actions "create[d] a contractual debtor-creditor relationship between the drawee bank and [the] customer[s]." *Calisch Assocs., Inc. v. Mfrs. Hanover Trust Co.*, 151 A.D.2d 446, 447, 542 N.Y.S.2d 644 (1st Dep't 1989) (affirming dismissal of conversion claim by customer against bank). "Money deposited in a general account at a bank does not remain the property of the depositor," but "becomes the property of the depository bank." *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 560 (2d Cir.1976). The plaintiffs thus did not possess lawful control over the funds prior to the restraints. Because funds deposited with a bank become an asset of the bank, indebting it to the depositor, the appropriate remedy is contract—not tort. *Kirschner v. Bennett*, 648 F.Supp.2d 525, 542 (S.D.N.Y.2009).

 Plaintiffs argue that the restraints imposed a "segregating effect" on the funds in the accounts, rendering them sufficiently identifiable. (Pls.' Mem. L. Opp. at 19.) But whether funds in an account are general or specifically identifiable "depends upon the mutual understanding and intention of the parties at the time such deposit is made." *Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327, 330 (2d Cir.1992) (internal quotations omitted). "[T]he burden of proof is on the depositor to ... prov[e] that the deposit

was made upon such terms and conditions as constituted a special deposit, or a deposit for a specific purpose, as distinguished from a general deposit." *Id.* The plaintiffs allege that they maintained checking accounts containing their wage income, but do not allege that they opened the accounts or deposited wages with instructions to TD Bank to manage the funds in a particular way. "An action for conversion requires specific and identifiable property. A checking account, which does no more than create a debtor-creditor relationship, does not satisfy that requirement and cannot be converted." *Luxonomy Cars v. Citibank, N.A.*, 65 A.D.2d 549, 550, 408 N.Y.S.2d 951 (2d Dep't 1978). Because the plaintiffs cannot show that TD Bank segregated plaintiffs' funds from its other accounts, the conversion claim must be dismissed. *See, e.g., Schroeder v. Capital One Fin. Corp.*, 665 F.Supp.2d 219, 225 (E.D.N.Y.2009) (dismissing conversion claim against bank based on "wrongful distribution of funds" in account); *Tevdorachvili v. Chase Manhattan Bank*, 103 F.Supp.2d 632, 643 (E.D.N.Y.2000) ("As a matter of law, plaintiff as a depositor cannot assert such a conversion cause of action against his bank."); *Wexselblatt v. Bank of Boston Int'l*, 666 F.Supp. 513, 517 (S.D.N.Y.1987) (same).

### b. *Breach of Fiduciary Duty*

 Under New York law, a claim for breach of fiduciary duty consists of a "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir.2004). "New York law is clear that the usual relationship of bank and customer is that of debtor and creditor." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 122 (2d Cir.1984) (affirming dismissal

of breach of fiduciary duty claim against bank). "A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former." *Fallon v. Wall St. Clearing Co.*, 182 A.D.2d 245, 250, 586 N.Y.S.2d 953 (1st Dep't 1992); *see also Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 73 A.D.3d 571, 572, 905 N.Y.S.2d 6 (1st Dep't 2010) (affirming dismissal of "claim against [a] bank for negligent misrepresentation absent a fiduciary relationship, which does not exist between a bank and its customer"). Under "unusual circumstances," however, a fiduciary relationship may arise between a bank and its customer. *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir.1993). The customer must show "a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding or an assumption of control and responsibility." *Id.* (internal citations and quotations omitted) (affirming Rule 12(b)(6) dismissal of breach of fiduciary duty counterclaim against bank).

█ The plaintiffs have not met this burden. Plaintiffs state that TD Bank "owed a fiduciary duty to Class Members to insure Class Members were not deprived of monies that lawfully belonged to them," but do not allege any facts tending to show that their relationship with TD Bank was more than that of a bank and its customers. (Am. Compl. ¶¶ 57–60.) Plaintiffs present no facts showing that they invested confidence in TD Bank's employees, or that plaintiffs relied on its "superior expertise or knowledge" with respect to a particular transaction. *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 122, 672 N.Y.S.2d 8 (1st Dep't 1998). Without facts indicating their relationship with TD Bank exceeded that of debtor and creditor, plaintiffs cannot state a claim of breach of fiduciary duty under New York law. *See, e.g., SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355–56, 777 N.Y.S.2d 62 (1st Dep't 2004) (affirming dismissal of conversion claim by customer against Citibank).

### c. *Fraud*

█ To state a claim for fraud under New York law, a plaintiff "must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir.2009) (quoting *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (N.Y.1996)).

█ In a federal diversity action, a plaintiff alleging fraud must further comply with Rule 9(b), Fed. R. Civ. P. *Equifax*, 583 F.3d at 108. Rule 9(b) requires that a plaintiff plead allegations of fraud by stating "with particularity the circumstances constituting fraud or mistake." A complaint must " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.2006) (internal quotations omitted). Although "[m]alice, intent, knowledge, and other condition of mind" may be alleged generally, a plaintiff must provide facts giving rise to "a strong inference of fraudulent intent." *Acito v. IMCERA Grp. Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). This may be established "by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 634 (2d Cir.1996).

The plaintiffs have failed to allege circumstances constituting fraud with sufficient particularity. Plaintiffs allege only that TD Bank "made a material omission" by "failing to provide [plaintiffs] with the exemption notice and exemption claim forms" despite being "aware it had a duty" to do so. (Am. Compl. ¶¶ 62–63.) Plaintiffs do not identify any particular statements or omissions made by TD Bank, who made such statements or omissions, or when such statements or omissions were made. Nor has plaintiff identified any facts giving rise to a strong inference of fraudulent intent. Plaintiffs do not allege facts showing TD Bank's motive to defraud plaintiffs, only that TD Bank was "aware it had a duty" to send the EIPA notices and forms. (*Id.*) Drawing all reasonable inferences in plaintiffs' favor, these conclusory allegations unsupported by particularized facts are insufficient to satisfy Rule 9(b). *See S.Q.K.F.C.,* 84 F.3d at 634.

### d. *Unjust Enrichment*

"In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,* 631 F.3d 42, 55 (2d Cir.2011) (internal quotations omitted). A plaintiff need not establish "the performance of any wrongful act by the one enriched" to prevail provided equity and good conscience

requires return of the property. *Ptachewich v. Ptachewich,* 96 A.D.2d 582, 583, 465 N.Y.S.2d 277 (2d Dep't 1983). However, a plaintiff cannot recover for unjust enrichment where the parties have a "valid and enforceable written contract" governing the same subject matter. *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (N.Y.1987). TD Bank moves to dismiss the unjust enrichment claim, contending that it is an effort to circumvent EIPA's "legislative preclusion of private lawsuits" and that the parties entered into a valid contract when plaintiffs opened their accounts. (Def.'s Mem. L. at 22–23.)[3]

Even were the Court to ignore plaintiffs' prior statement that each class member had a "contract and/or service agreement" with TD Bank in which it agreed to "abide by all federal and state laws applicable to" banks, (Compl. ¶¶ 55, 56), the Amended Complaint fails to state a claim for unjust enrichment. "When a plaintiff 'does not possess a private right of action under' a particular statute, and 'does not allege any actionable wrongs independent of the requirements of the statute,' a 'claim[ ] for … unjust enrichment [is] properly dismissed as an effort to circumvent the legislative preclusion of private lawsuits for violation of the statute.'" *Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 203 (2d Cir.2005) (quoting *Han v. Hertz Corp.,* 12 A.D.3d 195, 196, 784 N.Y.S.2d 106 (1st Dep't 2004)). The plaintiffs here argue that their "cause of action for unjust enrichment arises *wholly from [TD] Bank's failure to comply with EIPA.*" (Pls.' Mem. L. Opp. at 22 (empha-

---

**3.** Although plaintiffs do not allege an agreement in their Amended Complaint, the Court reiterates that plaintiffs stated otherwise in their initial Complaint (docket # I): "Upon information and belief, Defendant entered into a contract and/or service agreement with

each Class Member." (Compl. ¶ 55.) In each service agreement, TD Bank allegedly "covenanted to abide by all federal and state laws applicable to banking institutions." (*Id.* ¶ 56.)

sis added)).) Because plaintiffs "do[ ] not allege any actionable wrongs independent of the requirements of the statute," their unjust enrichment claim must be dismissed. *Broder*, 418 F.3d at 203 (internal citations and quotations omitted) (affirming dismissal of unjust enrichment claim where law created "no private right of action").

 Alternatively, this claim is barred because a contract governed the same subject matter. An action in quasi-contract is only available where *"there has been no agreement or expression of assent, by word or act, on the part of either party involved."* *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield*, 448 F.3d 573, 587 (2d Cir.2006) (quoting *Clark–Fitzpatrick*, 70 N.Y.2d at 388–89, 521 N.Y.S.2d 653, 516 N.E.2d 190) (emphasis in original). Here, the plaintiffs admit opening TD Bank checking accounts in which they deposited funds. (Am. Compl. ¶¶ 11–17.) "[A] checking account creates a contractual debtor-creditor relationship between" the parties. *Calisch Assocs.*, 151 A.D.2d at 447, 542 N.Y.S.2d 644. Plaintiffs thus cannot proceed on a quasi-contract theory.

Lastly, the plaintiffs have not shown how equity and good conscience require restitution of their funds. Plaintiffs suggest only that "[i]t would be inequitable" for TD Bank to retain any proceeds "derived" from its conduct. (Am. Compl. ¶ 71.) Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S.Ct. at 1949–50. Drawing all reasonable inferences of in their favor, these conclusory allegations are insufficient to state an unjust enrichment claim.

### e. *Negligence*

 To state a claim of negligence under New York law, plaintiffs must allege (1) a duty owed by the defendant to plaintiffs; (2) breach of that duty; and (3) injuries proximately caused by the breach. *See Stagl v. Delta Airlines*, 52 F.3d 463, 467 (2d Cir.1995). "In the absence of a duty, as a matter of law, no liability can ensue." *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir.1997). The scope of a duty owed to a plaintiff is a question of law. *See Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585, 611 N.Y.S.2d 817, 634 N.E.2d 189 (N.Y.1994).

 New York applies the economic loss doctrine to negligence claims. This doctrine prevents a plaintiff from recovering purely economic losses in a negligence action. *See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 271 A.D.2d 49, 711 N.Y.S.2d 391 (1st Dep't 2000) (*"Finlandia I"*), *rev'd on other grounds*, 96 N.Y.2d 280, 289, 727 N.Y.S.2d 49, 750 N.E.2d 1097 (N.Y.2001) (*"Finlandia II"*). A defendant is not liable to a plaintiff for economic loss unless there exists "a special relationship that requires the defendant to protect against the risk of harm to plaintiff." *Finlandia II*, 96 N.Y.2d at 289, 727 N.Y.S.2d 49, 750 N.E.2d 1097. Courts apply the doctrine "to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir.2000).

 The plaintiffs have failed to identify an actionable duty owed by TD Bank. Where a statute does not imply a private right of action for money damages, the plaintiff may not restate the identical claim under a negligence theory. *Uhr*, 94 N.Y.2d at 42, 698 N.Y.S.2d 609, 720 N.E.2d 886 (holding that statute did not imply

private right of action and affirming dismissal of common-law negligence claim based on same conduct). This Court has already concluded that EIPA does not create a private right of action for money damages by a judgment debtor against a bank. Plaintiffs allege that TD Bank "owed Class Members a duty" to satisfy its obligations under EIPA, but have not identified any duty owed by TD Bank apart from its obligations under EIPA. (Am. Compl. ¶¶ 74–77.) Accordingly, their negligence claim must be dismissed. *See Sabol,* 93 N.Y.2d at 726, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (concluding "that no viable common-law claim ha[d] been pleaded" where plaintiffs "d[id] not identify any common-law duties ... as distinguished from the alleged breach of" the statute); *Grasso,* 42 A.D.3d at 137–41, 836 N.Y.S.2d 40 (dismissing "causes of action [attempting to] circumvent the substantive standards [of statute]" that were a "watered-down version of" statutory claim).

The Court need not address whether the economic loss doctrine bars plaintiffs' claims in light of their purported service agreements with TD Bank.

## CONCLUSION

For the foregoing reasons, defendant TD Bank's motion to dismiss the Amended Complaint is GRANTED. The Clerk is directed to terminate the motion (Docket # 18) and enter judgment for the defendant.

SO ORDERED.