OPINION OF THE COURT
Richard Velasquez, J.
After oral argument and a review of the submissions herein, the court finds as follows:
Defendant Bank of America moves the court for dismissal of plaintiffs’ complaint pursuant to CPLR 3211 (a) (1) and (7) by virtue of a defense founded upon documentary evidence, and for failure to state a claim upon which relief can be granted. Specifically, defendant alleges that CPLR 5222 of the Exempt Income Protection Act (L 2008, ch 575) does not provide a private cause of action for a plaintiff/debtor.[1]
Plaintiffs oppose defendant’s motion to dismiss on the grounds that a plaintiff/account holder may enforce her/his rights under CPLR 5222-a, the EIPA, by implied/private right of action against a bank for violations of the EIPA.
Facts
Plaintiffs Delores Jackson and Shawn Jackson
Plaintiffs Delores Jackson and her daughter, Shawn Jackson, jointly maintained a savings and a checking account at one of defendant Bank of America’s branches in New York City. On December 2, 2010, plaintiffs received notice from defendant Bank of America that their accounts were frozen due to the service of a restraining notice and/or levy by third-party creditors on Shawn Jackson’s funds. At the time of the restraint, the Jacksons had approximately $1,707.79 in their savings account, and $2,309.36 in their checking account which the Jackson *951 plaintiffs contend was from Delores Jackson’s pension. At the time of the restraint, defendant Bank of America charged the Jacksons administrative fees associated with placing the restraint on the accounts in the amount of $100. Defendant then issued a check to plaintiff Shawn Jackson in the amount of $1,740. All of these actions took place on December 2, 2010— giving plaintiffs no advance notice or opportunity to contest the restraining order on the grounds that the funds in both accounts were exempt from restraint pursuant to CPLR 5222-a.
Defendant Bank of America provided an affidavit in support of its motion by Kathleen A. Arcuri, vice-president/operations manager in the Northeast legal order processing department for the Bank of America. Ms. Arcuri’s affidavit was provided in support of defendant’s motion to dismiss. Ms. Arcuri affirms in her affidavit that she is “responsible for the supervision of the part of the Legal Order processing Center which processes notices of restraint, attachments and/or levies by third-party creditors served under the laws of New York and certain other states in the Northeast Region.” She further avers that she is
“fully familiar with BANA’s procedures concerning restraining notices served on it by judgment creditors seeking to restrain the accounts of bank customers pursuant to the laws of New York, including CPLR § 5222, which were in place at the time the restraints effected upon the accounts of Plaintiffs Shawn and Delores Jackson and Odamis Villa.”
Ms. Arcuri, however, never mentions in her affidavit the mandates of CPLR 5222-a, the EIPA, which details procedures for the protection of account holders who have funds that are exempt from restraint by federal and/or state law that must be followed by a bank before funds can be restrained.
As an exhibit to her affidavit, Ms. Arcuri provides the following: exhibit A consists of a letter which Ms. Arcuri avers was sent to Shawn and Delores Jackson on December 2, 2010 by “BAÑA” — the same day on which the defendant took action to restrain the accounts, close one account and send a check for $1,740 to Shawn Jackson. The letter reads:
“Utica, NY 13502
“December 02, 2010
“Delores Jackson Shawn M. Jackson-Dasilva
“(Address redacted)
“Brooklyn, NY 11201-50515
“Reference No. (redacted) 0359
*952 “Case: SHAWN JACKSON
“Case No. (Redacted) 286/10
“Customer Name: SHAWN JACKSON
“Dear Valued Customer,
“We received a (n) Garnishment-NY Restraining Notice for $2,006.12 which required us by law to debit your:
“ACCOUNT # AMOUNT ATTACHED
“(REDACTED) 0887 $1,697.60
“(REDACTED) 3619 $469.36
NON-
REFUNDABLE PROCESSING FEE BOX#
$0.00
$100.00
“We are holding the above funds to satisfy this legal order pending further instructions from the court or attaching party.
“If required by state law we may have to attach future deposits if the amount attached is not sufficient to satisfy the amount of the legal order.
“If you have questions about the legal order, believe it should not apply to your amounts, or think the order contains an error, please contact the attaching party; FORSTER & GARBUS at 631-393-9400. We are unable to return the funds to you unless we receive a release.
“Should you have questions concerning your account, please contact our Customer Service Center at one of the numbers listed below. Should you need to forward any additional correspondence to us regarding this matter, please direct it to the address noted above. When contacting the Bank regarding this Garnishment-NY Restraining Notice, please use the reference # (redacted)0359. ”[2]
*953 Defendant’s letter makes no reference to exempt funds or any of the mandated procedures required by CPLR 5222-a, and, in fact, requires the recipients (“Delores Jackson Shawn M. Jackson-Dasilva”) to contact the “attaching party,” Forster and Garbus, if the Jacksons believe the order is in error. The letter also states “We are holding the above funds to satisfy this legal order pending further instructions from the court or attaching party.” The letter suggests that customer service can be contacted regarding the garnishment, but again, there is no reference whatsoever to the law regarding funds that are “exempt” from garnishment, and how a customer with exempt funds should proceed. In fact, the funds were not “held” by defendant Bank of America, they were sent on December 2, 2010 to Shawn M. Jackson-Dasilva only by certified check on the same day the letter referenced above was sent.
The next document submitted in support of defendant’s motion is exhibit B. Ms. Arcuri avers that exhibit B is a copy of a computer screen printed from the “BANA” tracking system, and is generated from the “BANA” legal order processing database. The database is maintained by the bank in the ordinary course of its business. The information in this database is input by the bank’s employee at or about the time that the employee processes a restraining notice. This notice states in relevant part the following: The accounts belongs to “Dolores Jackson Shawn H. Jackson-Dasilva”; the account numbers are xx0887 and xx3619; the available balance in xx0887 was $1,697.50 on December 2, 2010; the available balance in xx3619 was $2,309.36 on December 2, 2012; under the column entitled “Exemption Code,” no exemption is shown for either account.
Attached to exhibit B is a copy of a subpoena and restraining notice addressed to the Bank of America for the accounts of Shawn Jackson only, regarding a judgment in the amount of $2,006.12. The subpoena is dated November 24, 2010. The “Information Subpoena with Restraining Notice to Gar *954 nishee” addressed to defendant Bank of America contains none of the documents required by CPLR 5222-a before a bank can lawfully restrain a bank account.
At exhibit E, plaintiff attaches a document which shows “Attachment Type” as “Garnishment-NY Restraining Notice.” Near the top of this document is a notice in bold type which states: “ATTACHMENT TYPE MAY REQUIRE ACCOUNT REVIEW FOR FEDERAL . . . .” The notice stops at this point, apparently because the entire document was not copied. Again, this document indicates that the accounts belong to: “DOLORES JACKSON SHAWN M JACKSON-DASILVA” and that on December 2, 2010 account xx0887 contains $1,697.60 and account xx3619 contains $2,309.36. The last column is entitled “EXEMPTION CODE” and no exemption code is shown for either account.
Exhibit C is a photocopy of a cashier’s check payable to Shawn Jackson in the amount of $1,740. This check is also dated December 2, 2010. No explanation is provided as to why this certified check was sent through the mail to Shawn Jackson, and why her account was then closed. This action by defendant Bank of America was again a violation of CPLR 5222-a which requires that exempt funds in an account remain available for the recipient of the exempt funds use.
Exhibit G is a photocopy of a cashier’s check payable to Delores Jackson and Shawn M. Jackson-Dasilva in the amount of $76.04. No explanation is provided as to what these funds represent.
Defendant has not refuted plaintiffs’ claims that their funds were aggregated to satisfy the judgment amount in the restraining order, and that no attempt was made by the defendant bank to determine whether any funds in these accounts were “exempt” funds belonging to Delores Jackson. Further, Bank of America has not disputed the fact that the third-party creditor did not attach any of the mandated documents to the restraining order, and that CPLR 5222-a (b) requires that a bank receiving a restraining order without these documents may not, under any circumstances, restrain a bank account, and that any such restraint is void pursuant to this statute. CPLR 5222-a (b) (1) states explicitly that the person or entity issuing the restraining notice
“shall provide the banking institution with the restraining notice, a copy of the restraining notice, an exemption notice and two exemption claim forms *955 . . . [which] shall be in the forms set forth in [the statute] .... Failure to serve the notice and forms together with the restraining notice renders the restraining notice void, and the banking institution shall not restrain the account.”
Plaintiff Odamis Villa
Plaintiff Odamis Villa maintained two checking accounts and one savings account at one of defendant Bank of America’s New York City branches. On December 31, 2010, plaintiff Villa received notice from defendant that his account was frozen due to the service of a restraint notice and/or levy by third-party creditors. At the time of the restraint, plaintiff Villa had approximately $285 in one checking account, $54 in another checking account and $2,032 in his savings account received from his wages. Defendant charged Villa administrative fees associated with placing the restraint on his accounts in the amount of $100. Plaintiff Villa contends that defendant failed to apply the statutory exemption with respect to each of plaintiffs accounts, and instead aggregated them together. Defendant also sent plaintiff Villa a certified check in the amount of $1,740 on the same date the account was restrained.
Named plaintiffs and a class of similarly situated account holders of defendant contend that these practices — including, but not limited to, aggregating separate accounts for the purpose of determining the amount available to third-party creditors restraining the accounts, sending checks, failing to exempt funds from restraint that are exempt pursuant to the EIPA, and closing checking/savings accounts by sending checks to a named account holder in the amount defendant determines is exempt— violate the legislative intent of the EIPA. Plaintiffs also contend that they have a private right of action pursuant to CPLR 5222-a, as well as common law.
No information regarding plaintiff Villa’s accounts was provided to the court in defendant’s papers. Defendant has not refuted plaintiff Villa’s claim that his bank accounts were aggregated in order to satisfy the restraining order, and that he received none of the information mandated by CPLR 5222-a. Defendant Bank of America has also failed to alleged that it received from the third-party creditor all the documents required by CPLR 5222-a (b) and that receipt of these documents validated defendant’s restraint on plaintiffs’ funds.
*956 Discussion
A motion to dismiss based upon documentary evidence may be appropriately granted “only where the documentary evidence utterly refutes plaintiffs factual allegations, conclusively establishing a defense as a matter of law.” (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002].) “A party seeking to dismiss pursuant to CPLR 3211 (a) (1) on the ground that its defense is based on documentary evidence must submit documentary evidence that resolves all factual issues as a matter of law and conclusively disposes of the plaintiffs claim.” (Elow v Svenningsen, 58 AD3d 674, 675 [2d Dept 2009].)
In evaluating the documentary evidence submitted by defendant, the court finds that all said evidence tends to support the plaintiffs’ claims, and offers no defense whatsoever, to defendant Bank of America. It is the very exhibits submitted by defendant Bank of America in support of its motion to dismiss that demonstrate the defendant’s violations of CPLR 5222-a.
Defendant also moves the court pursuant to CPLR 3211 (a) (7) to dismiss plaintiffs’ complaint for failure to state a claim upon which relief can be granted. In evaluating a motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, accord the plaintiff the benefit of every possible favorable inference and determine only whether the facts as alleged fit within a cognizable legal theory. (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144 [2002]; Uzzle v Nunzie Ct. Homeowners Assn., Inc., 70 AD3d 928, 929-930 [2d Dept 2010].) A motion to dismiss must be denied if “from [the] four corners [of the pleading] factual allegations are discerned which taken together manifest any cause of action cognizable at law.” (Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001].) This standard is so liberal that the test is “whether the proponent of the pleading has a cause of action,” not whether the plaintiff has stated one. (Wiener v Lazard Freres & Co., 241 AD2d 114, 120 [1st Dept 1998].)
Analysis of Plaintiffs’ Factual Allegations Relevant to the EIPA and Whether Defendant’s Documentary Evidence Conclusively Establishes a Defense
As stated above, the court finds that the documentary evidence submitted by defendant supports plaintiffs’ claims, rather than establishing a defense. CPLR 5222-a was enacted as part of the EIPA of 2008 to protect judgment debtors, who are generally unrepresented, from the loss of their exempt income to *957 creditors seeking to enforce judgments by seizing the debtors’ bank accounts. The EIPA establishes a special process that differs in very significant ways from the process by which the underlying judgments were obtained. Unlike the normal process, CPLR 5222-a is designed not only to protect judgment debtors, but to encourage even unrepresented judgment debtors who have previously defaulted to come forward to protect their exempt income. (Midland Funding LLC v Roberts, 37 Misc 3d 617 [Sup Ct, Sullivan County 2012].)
Pursuant to CPLR 5222-a, the service of an exemption notice and exemption claim form by the person issuing the restraining notice (third-party creditor) “shall provide the banking institution with the restraining notice, a copy of the restraining notice, an exemption notice and two exemption claim forms with sections titled ‘ADDRESS A’ and ‘ADDRESS B’ completed.” (CPLR 5222-a [b] [1].) Service must be accomplished in accordance with subdivision (a) or (g) of CPLR 5222 and failure “to serve the notice and forms together with the restraining notice renders the restraining notice void, and the banking institution shall not restrain the account.” (Emphasis supplied.) “A bank ‘shall not restrain’ the debtor’s account unless it receives the notices and forms from the creditor.” (Cruz v TD Bank, N.A., 855 F Supp 2d 157, 167 [SD NY 2012].)
In the instant matter, the documentary evidence submitted by defendant does not establish that the “third party creditor” or “person issuing the restraining notice” provided the defendant Bank of America with a “restraining notice, a copy of the restraining notice, an exemption notice and two exemption claim forms” as mandated by CPLR 5222-a. Since the defendant has not demonstrated service of these documents upon it by the person issuing the restraining notice, it must be found that the defendant Bank of America should not have restrained plaintiffs’ accounts in the first instance, and accordingly has failed to establish a defense that it has complied with the requirements of CPLR 5222-a. Thus, the question now becomes whether these facts as alleged by plaintiffs fit within a cognizable legal theory, or demonstrate a private right of action, or an implied right of action, as defendant has presented no documentary evidence which “utterly refutes plaintiff[s’] factual allegations.” Defendant’s motion to dismiss pursuant to CPLR 3211 (a) (1) must be denied. The issue to be determined is whether plaintiffs, as the intended beneficiaries of CPLR 5222-a, have a private or implied right of action to demand enforcement of its provisions.
*958 Does the EIPA Provide a Private Right or an Implied Right of Action?
As has been discussed, in evaluating a motion to dismiss pursuant to CPLR 3211 (a) (7), the court must accept the allegations of the complaint as true and determine whether the facts fit within a cognizable legal theory. (Polonetsky v Better Homes Depot, 97 NY2d 46 [2001].) Defendant rightly asserts that the EIPA contains no expressed private right of action. Defendant concludes from this fact that plaintiffs, therefore, have no cause of action, and that plaintiffs’ complaint must therefore be dismissed.
It is well settled, however, that “[w]here a statute fails to expressly prescribe a private right of action, one can nevertheless be implied, provided that it is consistent with the legislative intent.” (Rhodes v Herz, 84 AD3d 1, 9 [1st Dept 2011], citing Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 38 [1999]; Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207, 211 [1990]; Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]; Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325 [1983].)
“A private right of action will be implied if (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the recognition of such right promotes the legislative purpose which under-girds the statute; and (3) the creation of such right is consistent with the legislative scheme for the statute. Legislative intent is thus the linchpin in any case where a private right of action is to be implied.” (Rhodes at 9 [citation omitted].)
These three factors are commonly known as the Sheehy test.
In Burns, the Court stated:
“The far better course is for the Legislature to specify in the statute itself whether its provisions are exclusive and, if not, whether private litigants are intended to have a cause of action for violation of those provisions. Absent explicit legislative direction, however, it is for the courts to determine, in light of those provisions, particularly those relating to sanctions and enforcement, and their legislative history, and of existing common-law and statutory remedies, with which legislative familiarity is presumed, what the Legislature intended” (59 NY2d at 325 [emphasis supplied]).
The analysis of whether a New York state or city statute provides an implied private right of action, must determine *959 whether such a right would promote the legislative purpose. This determination involves a two-part inquiry: (a) the legislature’s objective and then (b) whether a private right of action would promote that objective. (Matter of Allison v New York City Landmarks Preserv. Commn., 35 Misc 3d 500 [Sup Ct, NY County 2011], citing Uhr, 94 NY2d at 38 and Rhodes, 84 AD3d at 10.) As has already been stated, legislative intent is the linchpin in a case where a private right of action may be implied.
Legislative Intent: the EIPA
As the Court in Rhodes held, a private right of action will be implied where plaintiff/debtor is a member of the class for whom the statute was created, the recognition of such right promotes the legislative purpose, and most importantly, the creation of such right is consistent with the legislative scheme. A careful analysis of the legislative intent of the EIPA must be the foundation for a decision in the instant matter.
Clearly, the plaintiffs in the instant matter are members of the class for whom the statute was created. Each has or had exempt funds in a bank account, or accounts, and each alleges to have suffered harm as a result of the defendant Bank of America’s failure to comply with the EIPA’s provisions to protect persons such as plaintiffs. The question for this court to determine is whether the creation of such a private right of action or finding an implied right of action promotes the legislative purpose, and if so, whether the creation of such a right is consistent with the legislative scheme.
Legislative intent can be found in many places, but certainly the “Sponsors Memo” from Senator Dale Volker who introduced Senate Bill S6203B would be an appropriate source to determine “intent.” This “Sponsors Memo” from Senator Volker was included as an exhibit by defendant Bank of America in its motion to dismiss. The section of the bill entitled “JUSTIFICATION” spells out the concerns this bill was designed to address, and states as follows:
“New York and Federal laws exempt certain income from debt collection. Creditors cannot seize income such as Social Security, disability, pensions, public assistance, child support, and veteran’s benefits. Federal law specifically prohibits the use of the legal system to satisfy debts from veteran’s benefits, Social Security (SS), Social Security Disability (SSD), and Supplemental Security Income (SSI). For 750,000 New Yorkers, Social Security is their *960 only source of income. New York law also exempts benefits, such as pensions, public assistance, workers compensation, unemployment insurance, as well as child support, and spousal support or maintenance. To ensure that money judgments do not render working New Yorkers unable to care for their or their families’ most basic needs, New York also protects a baseline amount of every person’s earnings. It exempts 90 percent of earnings deposited into a bank account within 60 days prior to the date the bank receives the restraining notice.
“New York law also protects from garnishment a set amount of wages which is equivalent to thirty hours per week of employment at minimum wage. The exemption laws were enacted to ensure that safety-net income is not diverted from its intended purpose: helping the: elderly, disabled, and poor to maintain the resources needed for food, rent, medicine and other basic necessities. Despite existing law, bank accounts containing legally exempt income are frozen with ‘restraining notices’ issued pursuant to CPLR 5222, and hundreds of vulnerable New Yorkers lose access to the funds required for basic needs. The impact on low-income New Yorkers is devastating and puts families in peril of hunger, illness, loss of utilities, eviction and further loss of their limited income to bank fees. CPLR 5222 enables creditors to ignore exemption laws by empowering them to freeze an account regardless of its contents. CPLR 5222 permits a judgment creditor’s attorney to send a restraining notice to a bank holding a judgment debtor’s account. Direct deposit of benefits has become nearly universal. Currently, over three million or 80 percent of all SS, SSD, and SSI beneficiaries in New York receive their benefits through direct deposit, consistent with federal policy. Banks can easily identify accounts holding directly-deposited exempt income because each electronic deposit clearly states its source. However, under current law, CPLR 5222 makes no allowance for direct deposit of exempt funds and, instead, requires the bank to freeze the account or to risk being held in contempt of court. Only after the account is frozen, does a debtor receive notice of the restraint. Working New Yorkers are even further disadvantaged because they are given no notice that *961 90% of their wages from the 60 days prior to the restraint is exempt. The burden is on the account holder to show that the account contains exempt income. In the interim, the debtor is left without any financial resources. To make matters worse, currently the CPLR provides no specified procedure for a claim of exemption, and debtors are left guessing as to how to enforce their exemption rights. The system conflicts with federal and New York State’s policies of protecting certain funds from forcible collection to satisfy a judgment. The problem has reached epidemic proportions in New York. Debtors often have difficulty getting an account released even though the creditor has no legal right to its contents. Banks can provide little help, as only the creditor or a judge can release the account.
“All too often, however, creditors ignore calls from debtors, demand a debt payment as a condition of releasing the account, or insist on proof of the exemption that an elderly, disabled or poorly-educated person may be unable to produce, even when the bank possesses the necessary proof. Moreover, using the courts to claim an exemption is complicated and extremely difficult without the aid of a lawyer. Seeking relief in court takes at least two weeks and usually longer. While the courts have pro se forms to help litigants with a range of legal problems, there are no forms for exemption claims. In the worst cases, account holders do not understand their rights, while others give up trying to overcome the obstacles to releasing their accounts. The result is that creditors often take safety-net income from New Yorkers living on the margins. Those effected are unable to provide basic necessities for themselves and their families. Those who regain access to their accounts discover that the bank has debited their accounts for legal processing, overdraft and bounced check fees, often totaling hundreds of dollars. For low income debtors, such a loss often means skipping meals or forgoing medical treatment in order to pay the rent. The experience is so costly that many give up their bank accounts and revert to using expensive nontraditional financial services, including check cashing services.
“Numerous stories have been featured in the press regarding the seizure of exempt funds. Both the Wall *962 Street Journal and the Christian Science Monitor have recently published stories which called attention to the problem. It has become clear that a legislative solution is required. This bill will create a legal procedure by which judgment debtors are informed of which funds are exempt and provided an opportunity to assert that the funds in their account are exempt from seizure before the account is completely restrained or executed against. However, creditors will be able to restrain funds above the threshold levels and access non-exempt funds after the procedure has run its course. Connecticut and California have recently enacted similar laws to protect their most vulnerable citizens. The Assembly Judiciary and Consumer’s Committees held hearings on debt collection which brought to light the serious harm caused by the inability of the system to prevent the seizure of exempt funds. This bill will resolve the problem of seizing exempt funds and allow both judgment debtors and judgment creditors to protect their rights under the law.” (Senate Introducer Mem in Support, 2008 NY Senate Bill S6203B [emphasis supplied].)
In addition to this statement of legislative intent, the court also notes that Assemblywoman Helene Weinstein, Assembly sponsor of Bill A8527-A/S6203-B wrote to Governor Paterson urging him to sign the measure into law, as it was unanimously passed by the Assembly and Senate, and it established a procedure which would permit debtors to assert that their income is exempt from the execution of a money judgment. The Assemblywoman further stated:
“I became aware of this issue when the Judiciary and Consumer’s committees held a public hearing on debt collection practices. At that hearing, numerous witnesses called attention to this problem. All too often, by the time assistance is sought, the situation has reached crisis proportions, with the power shut off and accumulated bank fees as a result of bounced checks. The civil legal services community made it clear that this should not be allowed to happen and in fact they often are involved in the efforts to ‘unfreeze’ accounts containing exempt funds. A court proceeding is required to remedy the problem, leaving many vulnerable people shaken. Testimony revealed that many such debtors — particularly the *963 elderly — abandon the banking system and turn to expensive check cashing services. This problem clearly cannot be allowed to continue. This bill, which is modeled upon similar laws which have been enacted in California and Connecticut, will exempt the first $2,500 in a bank account which contains exempt income deposited within the last 45 days. The bar coding used in checking transactions today ensures that the bank will be able to identify such accounts. By exempting the first $2,500, the debtor will still have funds to clear checks written before they receive notification and to meet essential needs. The amounts in the account over $2,500 will be frozen until the exemption process has run its course. This balanced approach ensures that the debtor cannot simply empty the account upon notice and permits the collection process to continue as designed.” (Sponsor’s Mem, Bill Jacket, L 2008, ch 575 at 6-7 [emphasis added].)
In the Bill Jacket for Senate-Assembly Bill A8527-A/S6203-B is also found a list at pages 62-63 of the “141 Organizations Supporting Senator Dale Volker’s Income Exemption Protection Bill — S.6203-B. The Legislation Would Protect the Elderly, Disabled, Veterans, and other New Yorkers from Unlawful Restraints on their Bank Accounts.” These organizations range from AARP church organizations and neighborhood rehabilitations groups to Legal Services/Legal Aid, labor unions and the Western New York Law Center. The groups comprise the New Yorkers for Responsible Lending, and strongly endorsed the proposed legislation for the same reason mentioned by Assemblywoman Weinstein and Senator Volker.
Thus, as to the first two prongs of the test enunciated in Sheehy as to whether an implied right of action exists under New York law, the court finds that plaintiffs have demonstrated that they are members of the class for whose “particular benefit the statute was enacted,” and that recognition of a private right of action would “promote the legislative purpose” which is to ensure that life sustaining exempt funds are available for the basic necessities of life for the elderly, disabled, poor families, veterans, and others who depend on exempt funds.
Would an Implied/Private Right of Action under the EIPA be Consistent with its Legislative Scheme?
In Cruz v TD Bank (855 F Supp 2d 157, 172 [2012]), the court found that the third Sheehy factor is considered the “most crit *964 ical.” (See also Mark G. v Sabol, 93 NY2d 710, 720 [1999].) “Because of the Legislature’s plenary authority over its choice of goals and the methods to effectuate them, ‘a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme.’ ” (855 F Supp 2d at 172; cf. People v Grasso, 42 AD3d 126, 136-137 [1st Dept 2007], quoting Sheehy, 73 NY2d at 634-635.) The Cruz court found that “if a court is to ‘imply such a right, [it] must have clear evidence of the Legislature’s willingness to expose the [party] to liability that it might not otherwise incur.’ ” (855 F Supp 2d at 172; see Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 42 [1999].)
In the instant matter, however, the legislature has not provided a comprehensive enforcement mechanism as was provided in Sheehy, Uhr, and Mark G. For example, in Sheehy, a lawsuit was brought by a minor who suffered an accident after she had been sold alcohol despite a law barring such sales to minors. The Court declined to recognize an implied private right of action for the plaintiff minor because the legislature had provided a detailed enforcement mechanism for the statute, including criminal and civil remedies, but precluded recovery by an intoxicated minor. The Sheehy Court found that the legislature has specifically considered and rejected a cause of action by an intoxicated minor.
In Uhr, the Court held that a private right of action was inconsistent with the legislative scheme. There, a school district was required to conduct scoliosis testing under a provision in the Education Law, and the school district had failed to test plaintiff. Thus, plaintiffs scoliosis went undetected until it was difficult and painful to correct. The Uhr Court found that the Education Law had a detailed scheme for administrative enforcement, and that in enacting the statute the legislature had taken measures to insulate schools from liability and minimize their costs. Based upon the relevant language of the statute, the Court concluded that the legislature did not intend to expose school districts to tort liability for a program that greatly benefitted the wider population and if it became too costly, it would not be feasible.
The plaintiffs in Mark G. were children who had been abused or neglected in the foster care system. The provisions of the Social Services Law under which they sued did not contain an express private right of action. Noting that the legislature had *965 created an intricate scheme for administrative enforcement of the Social Services Law, the Court declined to find an implied right of action.
This court finds that under these key cases, an implied/private right of action will not be recognized where the legislature has created a detailed scheme of enforcement found in the statute itself, or through an intricate administrative enforcement scheme. An implied/private right of action will also not be found where the legislative history makes clear that the legislature has considered same for the class of persons represented by the particular plaintiff in an action, and has purposely not included that class. The instant matter, however, is an issue of first impression in New York State courts.
New York courts have found implied causes of action after the legislature has provided a remedy to a statute that has failed to afford the beneficiaries of that statute with the relief intended. Just as the EIPA was passed to protect persons with exempt funds in their bank accounts from unlawful restraint, “The Prompt Pay Act” was enacted to protect health care providers and patients against insurance companies that failed to pay claims in a timely fashion. (Governor’s Approval Mem, Bill Jacket, L 1997, ch 637 at 6.) The question of finding an implied private right of action where the rights of the beneficiaries of the Prompt Pay Act were being violated was addressed in Maimonides Med. Ctr. v First United Am. Life Ins. Co. (35 Misc 3d 570 [Sup Ct, Kings County 2012]).
Maimonides Medical Center, a health care provider which had rendered services to patients over several years, brought a claim against First United American Life Insurance Company for failing to timely pay claims for patients treated at Maimonides. Defendant First United American Life Insurance Company opposed Maimonides’ claim against it on the ground that “plaintiff does not . . . satisfy the third prong of the Sheehy test”— whether creation of such a right would be consistent with the legislative scheme (35 Misc 3d at 574). As the Prompt Pay Act conferred substantial enforcement authority upon the Superintendent of Insurance, defendant asserted that a “private right of action would be inherently inconsistent with the legislative scheme.” (Id. at 575.) Maimonides held, however, that
“[flor statutes that create rights to the individual [in Maimonides, a hospital; in the instant matter, account holders containing exempt funds], a private right of action to seek redress for injury is ‘not in *966 consistent with the legislative scheme,’ but would actually ‘augment the existing enforcement devices and enhance a legislative scheme which . . . imposes affirmative duties for the protection of those very individuals.’ ” (Maimonides at 577 [emphasis supplied].)
Maimonides was followed by Josephson v United Healthcare Corp. (2012 WL 4511365, 2012 US Dist LEXIS 144830 [ED NY 2012]). Citing to Maimonides, the Josephson court held that plaintiff doctors had a private right of action to sue under the Prompt Pay Act as well as the plaintiff hospital in Maimonides, on the same grounds as Maimonides, even though no express private right of action was found in the statute itself.
New York State Courts Have Not Previously Considered Whether Plaintiffs/Debtors Have an Implied/Private Right of Action Where Causes of Action Regarding Enforcement of the EIPA are at Issue
New York State cases involving an analysis of the EIPA have all been commenced by petitioners/plaintiffs who were not the bank customers with wrongfully restrained accounts. These cases were commenced by the banks, themselves, or third-party creditors. For example, in Chase Bank USA, N.A. v Greene (24 Misc 3d 1233[A], 2009 NY Slip Op 51716[U] [Civ Ct, Queens County 2009]), Chase Bank was the petitioner in an action to force respondent Citibank to turn over funds held in an account for respondents Annemarie Greene and Thomas Greene with a balance of $1,414.25 — an amount less than the exemption amount of $1,716. The EIPA specifically provides that any account containing less than the exemption amount cannot be restrained. Accordingly, the petition was dismissed and the restraint lifted from the account.
Similarly, in Midland Funding LLC v Singleton (34 Misc 3d 798 [Nassau Dist Ct 2011]), the plaintiff sought to challenge defendant account holder’s claim that the funds in its account were exempt funds under the EIPA. The court found that plaintiff was entitled to a hearing where defendant account holder must demonstrate proof satisfactory to the court that its funds were exempt funds within the meaning of the EIPA. Likewise, in Midland Funding LLC v Roberts (37 Misc 3d 617 [2012]) the defendant account holder’s determination that its funds were exempt from restraint resulted in plaintiff seeking a hearing at which defendant would be put to its proof as to whether the funds in the account were, indeed, exempt funds pursuant to the EIPA.
*967 In each of these cases, banks or third-party creditors were the petitioners/plaintiffs.
Three Major Cases Decided by the United States District Court for the Southern District of New York Have Held That No Implied/Private Right of Action Exists for EIPA Plaintiffs/ Debtors
In Cruz v TD Bank, N.A. (855 F Supp 2d 157, 167 [2012]), the court states unequivocally, that the “EIPA’s stated purpose is to ‘create a procedure for the execution of money judgments on bank accounts containing exempt funds to ensure that debtors can’ continue to access those funds.” (See Mem of Div of Budget, Bill Jacket, L 2008, ch 575 at 8.) But then the Cruz court found that the facts in Cruz did not compel the court to find an implied cause of action for the plaintiff even though in the court’s reasoning, it found that defendant TD Bank violated the EIPA.
The Cruz plaintiffs opened accounts with TD Bank, a national bank with branches in New York. Cruz and Pain, both account holders, had approximately $3,020 and $340 in their bank accounts prior to the events in their complaint. Plaintiffs each received notice from TD Bank that their accounts were frozen pursuant to a restraint by a third-party creditor. Plaintiff Cruz’s checking and savings accounts were frozen from August 2009 until April 2010, and Cruz was charged administrative and overdraft fees incurred by Cruz because of the restraint. Likewise, plaintiff Pain’s account was frozen on December 31, 2010 and was still frozen as of the date of the court’s decision.
Notably, the Cruz court found that
“TD Bank never received from the third-party creditors any disclosures concerning income in plaintiffs’ accounts that might be exempt. TD Bank thus did not send any such disclosures to the plaintiffs advising them how to claim an exemption. TD Bank also did not provide plaintiffs with a copy of the restraining notice that the third-party creditors served upon TD Bank.” (Cruz at 165 [citations omitted].)
All of the facts cited above constitute violations of CPLR article 52; 5222-a (b) (1) and (4) of the EIPA, which requires that
“[t]he person [or entity] issuing the restraining notice . . . shall provide the banking institution with the restraining notice, a copy of the restraining notice, an exemption notice and two exemption claim *968 forms . . . [which] shall be [the claim] forms set forth in [the statute] .... Failure to serve the notice and forms together with the restraining notice renders the restraining notice void, and the hanking institution shall not restrain the account.” (CPLR 5222-a [b] [1] [emphasis supplied].)
Despite these clear violations of an account holder’s rights where the accounts contained exempt funds, the court in Cruz found that a ‘ ‘private[/implied] right of action by a judgment debtor against a bank for money damages [and/or injunctive relief] is not consistent with EIPA’s legislative scheme” (855 F Supp 2d at 172) when considering the three factors set forth by Sheehy (73 NY2d at 633-634). The third of the Sheehy factors is considered to be the “most critical” (Mark G., 93 NY2d at 720) and provides that a court must determine “whether creation of such a right would be consistent with the legislative scheme.”
In analyzing the legislative scheme, the Cruz court begins with a discussion of article 52’s enforcement mechanisms.
“First, a private right of action is not consistent with Article 52’s enforcement mechanisms: ‘special proceedings’ that may be brought in New York state courts. CPLR § 5225(b) permits a special proceeding by a creditor against a garnishee to retrieve property. CPLR § 5227 permits a creditor to commence a special proceeding against ‘any person,’ including a garnishee, to pay to the creditor a debt owed to the creditor. In both proceedings, notice must be given to the judgment debtor and the court may allow the debtor to intervene. And prior to restraint, CPLR § 5239 permits ‘any interested person’ to commence a special proceeding against a creditor ‘or other person with whom a dispute exists’ to determine competing rights to property. These special proceedings do not fairly imply a post-restraint action by a debtor against a garnishee bank for money damages and injunctive relief. Where the Legislature ‘specifically considered and expressly provided for enforcement mechanisms’ in the statute, recognition of a private right of action is inconsistent with the legislative scheme.
“A private right of action against a bank for money damages is also inconsistent with Article 52’s available remedies. CPLR § 5239 . . . does not allow a debtor to seek damages or injunctive relief against a *969 bank following restraint.” (Cruz, 855 F Supp 2d at 172 [citations omitted].)
Yet, by this analysis, the rights of customers with accounts containing exempt funds clearly have been violated by the bank’s failure to comply with CPLR 5222-a (b) as their accounts were restrained even though the third-party creditor failed to comply with the provisions of the EIPA that require it to attach to the restraining notice served upon the bank the documents required by CPLR 5222-a. Further, the court in Cruz never addresses the question about how the EIPA is to be enforced when the beneficiaries of this law are harmed through noncompliance by both the third-party creditor and the bank.
In its analysis of CPLR 5222-a, the Cruz court found that the EIPA’s legislative history does not “fairly” imply a private right of action by a debtor against a bank. This results from the EIPA’s stated purpose, “to create a procedure” that “ensure[s] that debtors can” continue to access exempt funds. (Id. at 173.) Cruz finds that the EIPA was “modeled upon” a Connecticut state law addressing its enforcement of money judgments. Connecticut expressly provided a private right of action by a judgment debtor against a bank, whereas there is no similar provision in the EIPA. However, there is nothing in the legislative history of the EIPA which states that the legislature considered the expressed right in the Connecticut state law, and made a determination not to include the same expressed right in the EIPA.
Finally, Cruz finds that the EIPA, while imposing new requirements on banks not to unlawfully restrain an account or charge fees pursuant to an improper restraint, does not provide a right of private enforcement to the account holder. And while not providing the beneficiaries of this legislation a right to enforcement through tort litigation, Cruz does find the EIPA provides for an exemption for banks from liability for “inadvertently” failing to comply with the law in failing to send the required documents to the account holder. (CPLR 5222-a [b] [3].) Quoting Uhr (94 NY2d at 42), the Cruz court found no “clear evidence of the Legislature’s willingness to expose the [defendant] to liability that it might not otherwise incur.” (Cruz, 855 F Supp 2d at 173.) The question then becomes if there exists no implied private right of action for the beneficiaries of the EIPA, how would the bank incur any liability of any kind — whether “inadvertent” or not — for failure to send account holders the required documents?
The two other significant federal cases are Martinez v Capital One, N.A. (863 F Supp 2d 256 [SD NY 2012]) and Acevado v *970 Citibank, N.A. (2012 WL 996902, 2012 US Dist LEXIS 40242 [SD NY 2012]). Each also found that plaintiff account holders have no private right of action pursuant to the EIPA. Both cite to the rationale set forth in Cruz as the basis of their holdings. None of these decisions, however, consider that CPLR 5222-a is in the nature of a remedial statute which, throughout its legislative history, emphasizes the point that the primary purpose of this statute is to ensure account holders’ access to exempt funds where a third-party creditor seeks to restrain an account containing federal or state funds that are exempt from restraint. Neither provide an analysis of the legislative history or legislative scheme which supports their conclusions that the New York State Legislature simply did not provide an implied private right to enforce the provisions of the EIPA. As there is no administrative body that oversees enforcement or a detailed administrative scheme of enforcement, the courts have identified the rights for these beneficiaries, but that the beneficiaries have no right to seek enforcement when the protections afforded by the EIPA are violated.
Are There “Enforceable Proceedings” Available to “Account Holders”?
The Cruz court held that available enforcement proceedings are limited to “special proceedings” under article 52, and that no such special proceeding is available to a judgment debtor who wished to sue a bank for damages and injunctive relief, including a proceeding brought pursuant to CPLR 5239. In other words, the Cruz court found that there is no remedy for an account holder containing exempt funds whose account has been wrongfully restrained by a bank, to seek redress and a voiding of said restraint, even pursuant to CPLR 5239.
In Martinez, the District Court held as follows: judgment debtors have no private right of action to sue a garnishee bank for violation of the EIPA; and a plaintiff cannot maintain a common-law negligence claim based on conduct governed by statute when that statute offers no private right of action.
The court recites the requirements of CPLR 5222-a as to the judgment debtor being given notice of the restraining notice and exemption claim forms, and all the other rights conferred by the EIPA as amended in 2009, but nowhere is there an explanation in Martinez as to how an account holder whose account contains exempt funds and has been wrongfully restrained pursuant to the requirements of CPLR 5222-a, can seek redress of these wrongful actions. Although Martinez discusses CPLR *971 5239 at length as a possible right of action for a judgment debtor against a bank, Martinez concludes this discussion with the following statement:
“First, there is nothing in the plain language of the statute that prevents judgment debtors from invoking the procedures under Article 52 to ensure compliance by banks. Although CPLR § 5239 and CPLR § 5240 more commonly address disputes between debtors and creditors, several cases suggest that the ‘special proceeding’ remedy is available to compel garnishee banks to adhere to their obligations under EIPA.” (Martinez at 264.)
In support of this finding, the Martinez court cites to McCarthy v Wachovia Bank, N.A. (759 F Supp 2d 265, 276 [ED NY 2011]). The relevant facts of McCarthy are that McCarthy was a New York resident who purchased property in the State of Florida, and opened a bank account with the defendant Wachovia Bank, N.A. At the time McCarthy opened his account, he signed a contract which contained a clause giving Wachovia Bank power over the plaintiffs bank account as to any restraining notice received, and that plaintiff would not contest said restraining notice. In fact, plaintiff agreed by signing the contract that Wachovia Bank would recognize and honor the service of process for a restraining notice. Wachovia in Florida was served with a restraining notice as to a default judgment against plaintiff in the amount of $8,891.74. It should be noted that there was no claim by plaintiff that this account contained any “exempt” funds pursuant to CPLR 5222 or CPLR 5222-a.
Plaintiff McCarthy commenced an action on March 18, 2008 containing six causes of action and included, inter alia, a cause of action pursuant to CPLR 5222. The District Court for the Eastern District of New York held:
1. deposit agreement barred customer’s claims against bank arising from bank’s conduct in restraining funds in customer’s account pursuant to postjudgment restraining notice issued pursuant to New York law;
2. under New York law, firm and attorney could issue, and bank could honor restraining notice against customer’s Florida bank account;
3. restraint of bank account did not violate customer’s due process rights;
4. bank was not required to investigate validity of restraining notice;
*972 5. law firm and attorney were not liable under Fair Debt Collection Practices Act;
6. law firm and attorney were not liable for abuse of process; and
7. any failure to provide customer with restraining notice was harmless under New York law.
Plaintiff McCarthy commenced this action with a claim pursuant to CPLR 5222 against Wachovia Bank. There was apparently no challenge to plaintiffs right to bring an action against Wachovia pursuant to CPLR 5222, and thus, by implication, the McCarthy court recognized an implied private right to sue by an account holder against a bank. Apparently, since plaintiff did not claim exempt funds, the protections provided by CPLR 5222-a were not considered, and hence the McCarthy court held that any failure to provide customer with restraining notice was harmless under New York law, in direct contravention of CPLR 5222-a’s requirements. However, the EIPA does not in any way suggest that its mandates apply only to judgment debtors who have “exempt” funds in their accounts. The legislative history of the EIPA demonstrates clearly that this remedial legislation was enacted for the purpose of having account holders identify to the bank whether their accounts contained “exempt” funds, so that the bank would not restrain these funds from the uses for which they were provided — to purchase the necessities of life.
Finally, McCarthy mentions CPLR 5239 and 5240 as possible mechanisms for challenging the validity of the restraining notice. The court found that plaintiff “failed to avail himself of these statutory remedies,” and that he never sought to challenge the underlying default judgment claim. (759 F Supp 2d at 276.) Yet, at the same time, the McCarthy court apparently found that a deposit agreement/contract barred customer’s claims against a bank arising from bank’s conduct in restraining funds in a customer’s account pursuant to postjudgment restraining notice issued pursuant to New York law. A reasonable interpretation of the court’s findings is that even if plaintiff account holder had availed himself of the actions set out in CPLR 5239 and 5240, the language of the contract between the plaintiff account holder and the bank would have prevented plaintiffs action.
The Acevado court found no implied/private right of action by account holders against banks for any violations of CPLR 5222-a, following the reasoning in Cruz. Acevado determined *973 that CPLR 5222 provided a right for a judgment debtor to challenge the underlying judgment, but not to sue a bank for violating the mandates of the EIPA which are directly applicable to banks receiving restraining notices from judgment creditors. Thus, none of these three cases offers an account holder whose account contains exempt funds and whose account has been wrongfully and in violation of CPLR 5222-a restrained, a right to bring an action for either damages resulting from lack of access to exempt funds, or injunctive relief to prevent banks from continuing to violate the EIPA with no redress for those harmed. Nor do any of these three cases provide a remedy to the beneficiaries of the EIPA where its provisions have been clearly violated by a bank’s conduct.
In Summary
In the instant matter, plaintiffs suffered harm due to defendant Bank of America’s violations of protections afforded plaintiffs by the EIPA. Those harms included, but are not limited to, restraining plaintiffs’ bank accounts in violation of CPLR 5222-a which mandates that the judgment creditor
“shall provide the banking institution with the restraining notice, a copy of the restraining notice, an exemption notice and two exemption claim forms . . . [which] shall be in the forms set forth in [the statute] .... Failure to serve the notice and forms together with the restraining notice renders the restraining notice void, and the hanking institution shall not restrain the account.” (CPLR 5222-a [b] [emphasis supplied].)
According to the exhibits attached to defendant’s motion to dismiss, the defendant Bank of America did not receive “a copy of the restraining notice, an exemption notice and two exemption claim forms” from the judgment creditor, and thus was barred from restraining plaintiffs’ accounts (CPLR 5222-a [b] [4] [a], [b]) as well as barred from charging any fees to plaintiffs’ accounts. (CPLR 5222 Q].) Defendant, in violation of these provisions of CPLR 5222-a, instead sent a letter on December 2, 2010, to plaintiffs:
• instructing plaintiffs that their accounts had been restrained upon receipt of the restraining order;
• stating that by law the defendant Bank of America was required to restrain the accounts;
*974 • stating that plaintiffs could contact the third-party creditors to correct any errors or if plaintiffs had questions about the restraining order;
• informing plaintiffs that if there were insufficient funds in one account, all other accounts belonging to the account holders could be restrained as well; and
• informing plaintiffs that the bank was unable to return the funds to plaintiffs unless the bank received a release.
Nowhere in this letter was there any information about sources of funds that might be exempt from restraint, or how the plaintiffs were to notify the bank should exempt funds exist. The same day (Dec. 2, 2010) as defendant Bank of America restrained plaintiffs’ funds, defendant aggregated funds from two accounts (as neither account contained the minimum amount for restraint), converted funds in the joint account held by Delores Jackson and Shawn M. Jackson-Dasilva into two certified checks.
Even though Delores Jackson has alleged that the funds in the larger account containing $1,697.60 were her pension funds and therefore exempt from restraint, a check in the amount of $1,740 was sent to Shawn M. Jackson-Dasilva, and a check for $76.04 was sent to Delores Jackson. Both accounts were then closed.
By taking such action, defendant Bank of America deprived plaintiffs of access to the funds in their accounts. Plaintiffs did not have access to these funds while the certified checks were being mailed to the plaintiffs, and, further, plaintiffs then had to use “check cashing” businesses and pay fees to have access to their funds as their accounts were closed, in direct contravention of the EIPA according to its legislative history. Any checks written on these accounts before the bank restrained all funds were not honored by the defendant, and plaintiffs were allegedly charged “bounced-check” fees for any checks presented. Such actions by defendant Bank of America were in contravention of the EIPA whose sole purpose is to
“protect judgment debtors, who are generally unrepresented, from the loss of their exempt income to creditors seeking to enforce judgments by seizing the debtors’ bank accounts. EIPA establishes a special process that differs in very significant ways *975 from the process by which the underlying judgments were obtained. Unlike the normal process, [EIPA] is designed not only to protect judgment debtors, but to encourage even unrepresented judgment debtors who have previously defaulted to come forward to protect their exempt income.” (Midland Funding LLC v Roberts, 37 Misc 3d 617, 618 [2012].)
The legislative intent of this remedial statute could not be clearer. The legislature’s desire was to enact into law a procedure which, unlike the procedures set forth in CPLR 5222, would protect account holders whose federal and/or state funds are exempt from third-party creditor restraint. These protections were needed to enable the beneficiaries of this legislation to have access to those funds to meet the necessities of life. Repeatedly, throughout the legislative history of the EIPA, the purpose of the EIPA has been set forth in strong and clear language— “To create a procedure for the execution of money judgments on bank accounts containing exempt funds to ensure that debtors can keep access to the exempt funds.” (Mem of Div of Budget, Bill Jacket, L 2008, ch 575 at 8.)
Moreover, as has already been discussed, because of the legislature’s plenary authority over its choice of goals and the methods to effectuate them, “a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme.” The three New York State cases discussed above emphasize this principle. In the instant matter, however, the legislature has not provided a comprehensive enforcement mechanism as was provided in Sheehy, Uhr, and Mark G.
To recapitulate, in Sheehy, a lawsuit was brought by a minor who suffered an accident after she had been sold alcohol despite a law barring such sales to minors. The Court declined to recognize an implied private right of action for the plaintiff minor because the legislature had provided a detailed enforcement mechanism for the statute, including criminal and civil remedies, but precluded recovery by an intoxicated minor.
The plaintiffs in Mark G. were children who had been abused or neglected in the foster care system and the Social Services Law under which they sued did not contain an express private right of action. Noting that the legislature had created an intricate scheme for administrative enforcement of the Social Services Law, the Court declined to find an implied right of action.
*976 In Uhr, the Court held that a private right of action was inconsistent with the legislative scheme. There, a school district was required to conduct scoliosis testing under a provision in the Education Law, and the school district had failed to test plaintiff. Plaintiff’s scoliosis went undetected until it was difficult and painful to correct. The Uhr Court found that the Education Law had a detailed scheme for administrative enforcement, and that in enacting the statute the legislature had taken measures to insulate schools from liability and minimize their costs. Based upon the statutory language, the Court concluded that the legislature did not intend to expose school districts to tort liability for a program that greatly benefitted the wider population would not be feasible if it became too costly.
No such detailed scheme for administrative enforcement exists for the beneficiaries of the EIPA.
Are the Beneficiaries of CPLR 5222-a without Any Remedies When Banks Fail to Comply with the Statute?
This court finds the answer to this question is “No.” There are two provisions of the EIPA which, read in the context of the legislative intent and legislative scheme of section 5222-a, give the beneficiary account holders a remedy where banks violate its provisions:
CPLR 5222-a (h) provides as follows: “Rights of judgment debtor. Nothing in this section shall in any way restrict the rights and remedies otherwise available to a judgment debtor, including but not limited to, rights to property exemptions under federal and state law.” Given the strong language found in the legislative intent of this amendment to CPLR 5222-a, and the detailed procedure which third-party creditors and banks are mandated to follow in order to protect the exempt funds of account holders, it defies logic and reason that this legislation would provide no remedy where the EIPA is so willfully and carelessly violated.
Moreover, the EIPA provides a protection to banks who “inadvertently” fail to provide its customers with the restraining notice, exemption notice and exemption claim forms. Why would the legislature make only this specific exclusion of liability for banks if no other causes of action or theories of liability exist? In the instant matter, the bank did not inadvertently fail to provide its customers with the required notices, it never received the required notices from the third-party creditors in the first place. Not having received said notices, the bank had no legal authority to restrain the beneficiaries of this legislation’s ac *977 counts. The EIPA makes very clear that under these facts the bank has violated the EIRA and all of its protections for exempt funds account holders, and eviscerated the very legislation meant to ensure that low income, disabled, seniors, and others with exempt funds would not be without funds to purchase the necessities of life.
Finally, at least one New York court has found an implied private right of action where the rights of the beneficiaries of remedial legislation (the Prompt Pay Act) were being violated. Maimonides Med. Ctr. v First United Am. Life Ins. Co. (35 Misc 3d 570 [2012]) found that although there was no expressed right of action against insurers who failed to pay insureds’ claims on time, both hospitals and individual physicians had an implied right to sue to enforce the Prompt Pay Act. And the Maimonides court found this implied right, even though there was administrative enforcement provided in the act.
Conclusion
Accordingly, for all of the reasons stated above, defendant Bank of America’s motion to dismiss plaintiffs’ complaint on the ground that plaintiffs have no cause of action pursuant to CPLR 5222-a is hereby denied in its entirety. This court finds that plaintiffs have an implied right of action to seek a remedy where all the protections provided to plaintiffs and all others in similar situations have been violated, no detailed scheme for administrative enforcement exists, and plaintiffs have suffered harm as a direct result of said violations. As demonstrated above, such an implied/private right of action must exist in order to carry out the strong and clear legislative intent of the EIPA, and “augments” the statutory scheme of the EIPA.
The court further finds that plaintiffs in similar lawsuits brought in the federal courts have been denied relief on the basis that no implied/private right of action exists, and as a result each of their claims based upon common law or other theories have also been denied on the ground that no implied/ private right of action exists. As in the instant matter, the claims raised by plaintiffs herein will not be denied based upon the ground that no private right of action exists. Thus, plaintiffs may likewise proceed with each of their individual common-law claims as well until all discovery is completed.

. Defendant also contends that plaintiffs’ claims under CPLR 5222 of the Exempt Income Protection Act (EIPA) must be dismissed because CPLR 5222 is preempted by federal law and regulations. Based upon the holdings in Cuomo v Clearing House Assn., L.L.C. (557 US 519 [2009]), Barnett Bank of Marion County., N.A. v Nelson (517 US 25, 33 [1996]) and Mwantembe v TD Bank, N.A. (669 F Supp 2d 545 [ED Pa 2009]), the court herein finds no “conflict preemption.” Causes of action sounding in consumer protection statutes have repeatedly been found by federal courts not to be preempted.

. CPLR 5222-a provides in relevant part that the person or entity issuing the restraining notice
“shall provide the banking institution with the restraining notice, a copy of the restraining notice, an exemption notice and two exemption claim forms . . . [which] shall be in the forms set forth in [the statute] .... Failure to serve the notice and forms together with the restraining notice renders the restraining notice void, and the banking institution shall not restrain the account” *953 (CPLR 5222-a [b] [1] [emphasis supplied]).
The statute further provides that “[w]ithin two business days after receipt of the restraining notice or execution, exemption notice and exemption claim forms, the banking institution shall serve upon the judgment debtor the copy of the restraining notice, the exemption notice and two exemption claim forms . . . .” (CPLR 5222-a [b] [3].) There is no reference in the letter sent to plaintiff on December 2, 2010 that it contained the mandated forms required by statute. Further, no evidence of any kind was provided by defendant Bank of America that it complied with this provision of CPLR 5222-a.